DeMOISE ET AL., APPELLEES, *v.* DOWELL ET AL., APPELLANTS.

[Cite as DeMoise *v.* Dowell (1984), 10 Ohio St. 3d 92.]

(No. 83-782—Decided April 18, 1984.)

*Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.*, and *Mr. David L. Simiele*, for appellees.

*Mr. James R. Unger*, prosecuting attorney, *Mr. Michael P. Zirpolo, Mr. David M. Bridenstine, Messrs. Squire, Sanders & Dempsey, Mr. James H. Woodring, Mr. Daniel O'Loughlin* and *Mr. John Gall*, for appellants.

*Mr. Anthony J. Celebrezze, Jr.*, attorney general, and *Ms. Janet B. Stewart*, urging reversal for *amicus curiae*, Ohio Department of Health.

WILLIAM B. BROWN, J. The issue presented in this case is whether it is within the authority of the Stark County Board of Health ("board") to require that whenever a sanitary sewerage system becomes accessible to a property, the household sewage disposal system must be abandoned and the property connected to the sewerage system and, if so, whether such a requirement constitutes a deprivation of due process of law. This court concludes that the General Assembly has properly delegated its police power with regard to public health and that therefore the board possesses the authority to issue orders requiring connection to the sanitary sewerage system. Since the enforcement of the regulations requiring connection is a reasonable application of the police power to protect the public health this court further concludes that there has been no violation of due process.

It is fundamental that the protection and preservation of the public health is a prime governmental concern and thus a function of the state. *State, ex rel. Mowrer, v. Underwood* (1940), 137 Ohio St. 1 [17 O.O. 298]. It is

equally well established that the state can directly exercise its police power concerning public health or it may delegate that power to other governmental agencies. *Ex parte Company* (1922), 106 Ohio St. 50.

The instant controversy arises from the fact that there are two methods whereby county government in Ohio can provide for the construction and utilization of sanitary sewer lines. R.C. Chapter 6117 permits county commissioners to construct public sewer lines. This chapter provides for: the development of a plan, notice and public hearing, and appellate procedures for owners of property to be assessed for such improvements. In contrast, R.C. 307.73 permits construction by a private entrepreneur with the permission of the county commissioners, establishes the procedure for tap-in by non-participants, and contains few of the procedural protections set forth in Chapter 6117. The sewer line at the heart of this controversy was constructed under the latter provision.

Appellees contend that the board has no authority to order hookups where a private sewer line is constructed. First, appellees maintain that R.C. Chapter 6117 represents the sole method by which mandatory hookups may be made. In their view, the extensive array of procedural safeguards for the construction of a public sewer, present in Chapter 6117, together with the authority R.C. 6117.51 provides for governmental bodies to order sewer connections, represents a sort of preemption of the subject by virtue of its very completeness. To give the board the authority to promulgate rules and regulations requiring connection would be, appellees argue, to allow the board to supersede the statutory authority of Chapter 6117. Appellees also assert that R.C. 307.73 addresses voluntary rather than mandatory participation because it contains no cross-reference to the protection of Chapter 6117 and because it was intended solely for private purposes and not as a general statute for public health.

Appellees' arguments, while possessing a veneer of fairness, do not accurately reflect the thrust of the relevant statutes. In the first place, whether or not R.C. 307.73 provides for mandatory connection is not the issue before this court. The order requiring connection was issued under the authority of the board's rules and regulations, not under R.C. 307.73. Additionally, while appellees claim that use of R.C. 307.73 to construct the sewer line in question deprives them of their constitutional rights, it should be noted that that statute specifically calls for constructive notice via the filing of a copy of the resolution granting permission to construct the sewer with the county auditor. There is no indication that this procedure was not followed in the present case.

While it is true that the legislature has delegated some authority regarding sewers under R.C. Chapter 6117, the General Assembly has also enacted an alternative and more comprehensive scheme of delegation of authority concerning public health. In enacting R.C. 3701.02 the General Assembly created a Department of Health. R.C. 3701.13 provides that "[t]he department of health shall have supervision of all matters relating to the preserva-

tion of the life and health of the people * * *." In R.C. 3701.34 the public health council, a part of the Department of Health, is given the authority to establish sanitary regulations of general application throughout the state. Pursuant to this authority, the public health council established a policy requiring the elimination of individual septic systems and connection to a sanitary sewerage system when such a system becomes accessible. Ohio Adm. Code 3701-29-02 provides:

"(L) No household sewage disposal system shall be installed, maintained, or operated on property accessible to a sanitary sewerage system.

"(M) Whenever a sanitary sewerage system becomes accessible to the property, a household sewage disposal system shall be abandoned and the house sewer directly connected to the sewerage system."

The public health council has further provided that this requirement represents a minimum standard. Ohio Adm. Code 3701-29-20(D). Thus, a local board of health may adopt more stringent standards when local conditions necessitate such action but the basic requirements cannot be made more lenient. *Id.*

Moreover, R.C. 3701.56 commands local boards of health to "* * * enforce the * * * sanitary rules and regulations adopted by the department of health." The board was therefore acting according to statutory directive when it ordered appellees to connect to the sanitary sewerage system in the present case.

Additionally, the General Assembly has directly delegated to the Stark County Board of Health the authority to:

"* * * make such orders and regulations as are necessary for its own government, for the public health, the prevention or restriction of disease, and the prevention, abatement, or suppression of nuisances." R.C. 3709.21.

Pursuant to this authority and in accordance with the directive of R.C. 3701.56, the board adopted Sections 2.12 and 2.13 of the Stark County Sanitary Code, the two regulations relevant to the present controversy. These provisions are virtually identical to the Ohio Administrative Code provisions and state:

"No household sewage disposal system shall be installed, maintained, or operated on property accessible to a sanitary sewer.

"Whenever a sanitary sewerage system becomes accessible to the property, a household sewage disposal system shall be abandoned and the house sewer directly connected to the sewerage system."

Appellees contend that R.C. 3709.21 does not authorize a board of health to force citizens to connect to a sanitary sewer. They argue that Sections 2.12 and 2.13 go beyond the mere protection of public health, prevention of disease, etc.; that no determination of a nuisance has been made in this case; and that septic systems are a lawful method of sewage disposal.

The legislative delegation of authority, under the present scheme, does not bear out this contention. Instead, it reflects a broad-based policy determination that individual household sewage disposal systems are inherently

more dangerous to the public health than sanitary sewerage systems and must be replaced when possible. It is not necessary that the board make a case-by-case evaluation of the efficiency of each septic system. The determination has already been made that septic systems pose a potential hazard to the public health, and that they are a potential nuisance to be prevented when possible. This determination is borne out by the facts of the present case. The trial court found one or two of the eighteen septic tanks/leach lines to be already malfunctioning at the time of trial. The court also found that there is less likelihood that a sanitary sewer will ripen into a health nuisance, through raw sewage escaping to the surface, than will a septic system. Moreover, the particular soil conditions of the area are conducive to the rapid failure of septic systems.

The fact that septic systems are themselves lawful is immaterial. That fact merely reflects the realization that a septic system is an appropriate means of sewage disposal so long as no sanitary sewerage system is available.

Therefore, this court concludes that a local board of health possesses the authority to require that whenever a sanitary sewerage system becomes accessible to a property, the household sewage disposal system shall be abandoned and the house sewer directly connected to the sewerage system. This authority applies regardless of the manner by which the sanitary sewerage system was constructed. The manner of construction is irrelevant to and independent from the issue of health and the policy concerns of those agencies charged with the protection of the public health.

The sole remaining question is whether the application of such a requirement constitutes a deprivation of due process. This court recognizes that appellees have a property interest in their septic systems, which were installed in conformity with the law. Section 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution protect against state taking of property without due process of law. However, the protection provided by these constitutional safeguards is not absolute. Almost every exercise of the police power interferes with the enjoyment of liberty or the acquisition, production or possession of property. Yet the constitutional provisions against the taking of property must give way to an exercise of the police power "* * * if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary." *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103 [4 O.O.2d 113], paragraph five of the syllabus; *Porter* v. *Oberlin* (1965), 1 Ohio St. 2d 143 [30 O.O.2d 491]; *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149 [23 O.O.3d 186].

Furthermore, this court has repeatedly recognized that whether an exercise of police power is really and substantially related to the public health, safety and morals and whether it is unreasonable or arbitrary are questions initially committed to the judgment and discretion of the legislative body. The courts will not invalidate an exercise of the police power unless the

legislative body's determination on the foregoing questions appears to be clearly erroneous. *Benjamin* v. *Columbus, supra,* paragraph six of the syllabus; *Ohio Edison Co.* v. *Power Siting Comm.* (1978), 56 Ohio St. 2d 212, 218 [10 O.O.3d 371].

Appellees have presented no arguments or evidence that the sewer connection requirement is not related to the public health or that it is unreasonable or arbitrary. As discussed above, the factual findings of the trial court reinforce the conclusion that the public health is better protected by use of sanitary sewerage systems than by employment of septic tanks.

This court has previously held that R.C. 3709.21, formerly G.C. 1261-42, is a valid and constitutional enactment. *Weber* v. *Bd. of Health* (1947), 148 Ohio St. 389 [35 O.O. 351]. However, in *Weber* the board of health's regulation was held to be an unconstitutional delegation of the legislative power, violative of equal protection, because it granted the health commissioner the unfettered power to grant permission to engage in an activity otherwise prohibited. No such arbitrariness is presented by the instant case. The sewer connection requirement is uniformly applicable and does not provide for discretionary exemptions. Additionally, the majority in *Weber* ignored the holding in *Ex parte Company, supra,* that the legislature may lawfully confer on boards of health the power to enact sanitary ordinances having the force of law.

Therefore, this court concludes that the requirement that house sewers be directly connected to a sanitary sewerage system when such a system becomes accessible bears a real and substantial relationship to the public health, is not unreasonable or arbitrary and does not constitute a deprivation of due process of law.

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

HOLMES and J. P. CELEBREZZE, JJ., dissent.

HOLMES, J., dissenting. I take no issue with the statements of the majority that the protection and preservation of the public health is a prime governmental concern and a function of the state, and that the state may exercise such function itself or delegate such authority. This exercise of the police power will be held to be valid if it bears a real and substantial relation to the health, safety, morals, or general welfare of the public, and if such exercise is not unreasonable or arbitrary.

Promulgation of regulations by the public health council regarding sanitary sewers, whether private or public, and private septic tank systems would certainly fall within the categorization of bearing a real and substan-

tial relation to the public health and safety. However, such regulations still must pass the test of reasonableness and non-arbitrariness.

Pursuant to the regulations of the Stark County Board of Health, which are identical to those promulgated by the public health council, the landowners are required to abandon their privately maintained sewage disposal systems when a sanitary sewerage system becomes accessible to their property, regardless of whether their system has been found to be defective in its operation. In my view, the regulations in this respect transcend the bounds of reasonableness.

Had the installation of the sanitary sewer here been a public one at the outset, procedures set forth in R.C. 6117.51 would have had to be followed with all of the attendant hearings for the establishment of such facility. Such procedure would also have provided the discretion on the part of the individual property owner to connect into the system, unless there was a determination that a health problem existed with a given private septic system. In such event, the landowner could be ordered to connect into the sanitary sewer system. No health problem was found to exist with the septic systems of the appellees.

There is a protected property interest in the systems as installed by these appellees upon their property, and to mandate that they abandon such systems, which are in perfect working condition, and hook up to the new sanitary system would, in my view, be taking a property right without due process of law.

Accordingly, I would affirm the judgment of the court of appeals.

J. P. CELEBREZZE, J., concurs in the foregoing dissenting opinion.