THE STATE OF OHIO, APPELLEE, *v.*
CROSS, APPELLANT.

(No. 85 CA 46—Decided
March 28, 1986.)

*Joe R. Fodal,* assistant prosecuting attorney, for appellee.

*Jack H. Berger,* for appellant.

WOLFF, J. Defendant-appellant Len Cross appeals from the judgment entered on the May 2, 1985 jury verdict in the Fairborn Municipal Court and the April 24, 1985 order of the municipal court overruling his motion to dismiss the charges.

Cross was originally charged with a violation of former R.C. 4549.45[1] on December 19, 1984. Subsequently, on April 24, 1985, the state filed an amended complaint, with leave of court, charging him with a violation of R.C. 4549.42(A).

Prior to the actual filing of the amended complaint, Cross — anticipating the amended complaint — filed a motion to dismiss the charge in the amended complaint. In his motion, Cross argued that R.C. 4549.42(A) is unconstitutional because "it attempts to prohibit an act which in no way affects the health, safety or morals of the citizens of this State." On April 24, 1985, an oral hearing on the motion was held and the trial court overruled the motion.

A jury trial was held on May 2, 1985, and the jury found Cross guilty of tampering with an odometer in violation of R.C. 4549.42(A). The court entered judgment on the verdict and sentenced Cross to six months in jail, with five months of the sentence suspended, and fined him $750. Cross appeals from the judgment of the municipal court, asserting two assignments of error.

The first assignment of error states: "The trial court erred in overruling appellant's motion to dismiss the charge because section 4549.42(A) of the Revised Code is unconstitutional."

R.C. 4549.42(A) states:

"No person shall adjust, alter, change, tamper with, advance, set back, disconnect, or fail to connect, an odometer of a motor vehicle, *or cause any of the foregoing to occur* to an odometer of a motor vehicle with the intent to alter the number of miles registered on the odometer." (Emphasis added.)

Cross argues that R.C. 4549.42(A) is unconstitutional because it restricts the right of an individual to utilize property as he sees fit and bears no relation to any valid interest of the state in protect-

---

[1] "No person shall transfer a motor vehicle if the person knows or should reasonably know that the odometer of the motor vehicle has been changed, tampered with, or disconnected to reflect a lesser mileage or use, unless that person gives clear and unequivocal notice of such tampering or of his reasonable belief thereof, to the transferee in writing prior to the transfer. In a prosecution for violation of this section, evidence that a transferor or his agent has changed, tampered with, disconnected, or failed to connect the odometer of the motor vehicle constitutes prima-facie evidence of knowledge thereof."

ing the health, safety, morals, or welfare of the public. We disagree.

In *Benjamin* v. *Columbus* (1957), 167 Ohio St. 103, 4 O.O. 2d 113, 146 N.E. 2d 854, the court held:

"Although almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Section 1 of Article I of the Ohio Constitution, or involve an injury to a person within the meaning of Section 16 of Article I of that Constitution, or deprive a person of property within the meaning of Section 1 of Article XIV of the Amendments to the Constitution of the United States, an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if it is not unreasonable or arbitrary.

"Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them." *Id.* at paragraphs five and six of the syllabus. See, also, *DeMoise* v. *Dowell* (1984), 10 Ohio St. 3d 92, 96-97, 10 OBR 421, 424-425, 461 N.E. 2d 1286, 1291.

In overruling the motion to dismiss, the trial court stated:

"The movant advances the argument that the person could change an odometer every day, but make disclosure at the time of sale. It appears to the Court that this law requires preservation of a record, a mechanical record, of the mileage of the car. An objective record, not a subjective record where some person would supposedly recall the miles that the car had been driven if the odometer were disconnected. And the requiring of this record appears to be to preserve the accurate reading or metering of the miles for a later sale of the automobile.

"Counsel agrees that [R.C.] 4549.46 is valid in protecting a future buyer, but this section involved in this action as amended is necessary to effect the keeping of that mechanical record and keep it free from tampering. If a buyer knew what he was buying, what is to protect a subsequent buyer who has no knowledge?

"To me, this is clearly a statute that does involve the health, safety, and morals, or at least safety and morals, and the State has the right to anticipate that not all transactions will be honest arm's-length transactions and to prohibit the conduct which is herein prohibited in order to protect the public."

Clearly, the trial court was correct in finding this statute to be constitutional and a valid exercise of the police power. The prohibition against tampering with odometers bears a real and substantial relation to protecting consumers from buying motor vehicles which have inaccurate odometer readings (see 29 Ohio Jurisprudence 3d [1981], Criminal Law, Section 2265), and can certainly be characterized as bearing a real and substantial relationship to public health, safety, or general welfare.

Cross argues as follows:

"If a man owns a car and chooses to install a new odometer or even to alter his existing one, in what manner does this action affect the health, safety and morals of the public so long as he keeps the car and does not sell it? Clearly, the anser [*sic*] is that it does not affect them in the least. It does not affect the road worthiness or safety of the car in the slightest. Therefore, it does not present any physical danger to other motorists on the highway. So long as the individual keeps his car, there is not one tiny bit of

affect [*sic*] that his action has on the health, safety and morals of the public. It is *only* when the car is transferred that the possibility of a public interest arise [*sic*]. But in that situation the disclosure requirements of Sections 4549.42(C),[2] 4549.45 and 4549.46[3] exist to adequately protect the public and to advise a prospective purchaser of the vehicle's true mileage." (Footnotes added.)

This argument is premised upon the necessary assumptions that there will be compliance with these sections, and that these sections will be sufficient to accomplish the legislature's purpose in all situations.

However, we conclude that both of these assumptions are flawed.

There are situations where the person obligated to comply will simply fail to do so.

Furthermore, there are numerous situations where ownership is transferred by operation of law[4] in which the owner who has previously tampered with the odometer can hardly be expected to comply with the disclosure requirements of R.C. 4549.45 and 4549.46.

A non-owner with access to a car, *e.g.,* the husband of a woman in whose name the car is titled, might, without the owner's knowledge, tamper with the odometer. The owner, upon sale, would not be able to reveal the true mileage on the car.

In these situations, transferees of cars will not receive accurate information about the mileage of the cars they acquire. When these transferees become transferors, this ignorance will be perpetuated in their transferees.

It is common knowledge that many cars will change hands several times over their useful lifetimes.

Because R.C. 4549.42(C), 4549.45, and 4549.46 do not in all situations assure the legislative purpose that transferees of automobiles receive true mileage figures, we conclude that there is indeed a real and substantial relationship of R.C. 4549.42(A) to the public health, safety, or general welfare, and that it is neither unreasonable nor arbitrary for the legislature to directly prohibit tampering with odometers.

The first assignment of error is overruled.

The second assignment of error states: "The verdict was against the manifest weight of the evidence."

"* * * [I]n considering an assignment of error in a criminal case which attacks the sufficiency of evidence, a certain perspective is required. This court's examination of the record at trial

---

[2] "Nothing in this section shall prevent the service of an odometer, provided that after such service a completed form, captioned 'notice of odometer repair', shall be attached to the left door frame of the motor vehicle by the person performing such repairs. Such notice shall contain, in bold-face type, the following information and statements:

" 'Notice of Odometer Repair

"The odometer of this motor vehicle was repaired or replaced on _____ (date of service).

"The mileage registered on the odometer of this motor vehicle before repair was _____ (mileage).

"The mileage registered on the odometer of this motor vehicle after repair is _____ (mileage).

"

_____
"(Repairman's signature)' "

[3] "No person shall fail to provide the true odometer disclosures required by section 4505.06 of the Revised Code. The transferor of a motor vehicle is not in violation of this section's provisions requiring a true odometer reading if the odometer reading is incorrect due to a previous owner's violation of any of the provisions contained in sections 4549.42 to 4549.46 of the Revised Code, unless the transferor knows of the violation."

[4] See R.C. 4505.10.

is limited to a determination of whether there was evidence presented, 'which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.' * * * Our review is thus confined to a determination of whether there was substantial evidence." *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 172, 10 O.O. 3d 340, 341, 383 N.E. 2d 132, 134 (citations omitted).

Cross contends that he could not be found guilty of violating R.C. 4549.42(A) because he did not change the odometer himself nor did he *cause* the odometer on the car to be changed.[5] Cross was the new car manager of Morningstar Chrysler at the time of the incident. He argues that he had no authority to order the service manager to change the odometer and thus could not have caused the mileage to be changed within the meaning of R.C. 4549.42(A). He also argues that he cannot be found guilty of violating R.C. 4549.42(A) because the customer, Jones, and not he, was the instigator of the odometer change.[6]

Black's Law Dictionary (5 Ed. 1979) 200 defines "cause" as follows: "To be the cause or occasion of; to effect as an agent; to bring about; to bring into existence; to make[;] to induce; to compel." Under this definition, we think Cross could have violated R.C. 4549.42(A) by merely acting as a middleman between the customer (instigator) who asked him to change the odometer reading and the service manager, who had a mechanic install a new speedometer head. He could be said to have induced or brought about the unit switch or to have effected the switch as the customer's agent. Therefore, if there was sufficient evidence that Cross acted as a middleman to induce the speedometer head change, then that would be enough to prove he *caused* the prohibited act.

We find that there was substantial evidence which, if believed by the jury, would support the jury's finding Cross guilty of violating R.C. 4549.42(A) beyond a reasonable doubt. The evidence shows that the 1983 New Yorker which was sold to Jones had 3,846 miles on the odometer when Morningstar Chrysler obtained it from Lebanon Chrysler-Plymouth and it had only 16 miles on the odometer when it was later sold to Jones. The evidence also indicates that Cross asked Freese — the service manager at Morningstar Chrysler — to "take the miles off" the New Yorker because Jones had requested it. The alleged reason Jones requested that miles be taken off was that he wanted the car but his wife would not buy it with so many miles on it. The evidence further shows that the speedometer head with over 3,000 miles on it was removed and another speedometer head with about one mile on it was installed.

We do not think it important that Cross may have lacked the authority to order the service manager to change the odometer, or that Jones was the instigator. There was evidence that Cross asked Freese to "take the miles off" because Jones wanted it done, and Freese had it done upon that request. As such, Cross acted as Jones' agent to effect the odometer change and, as such, Cross "caused" the odometer tampering for the purposes of R.C. 4549.42(A).

Thus, we find that there was

---

[5] One of the mechanics at Morningstar Chrysler, Cross' employer, took the original speedometer head out of the car and installed a new unit.

[6] Jones himself denied instigating the odometer change. However, other state witnesses quoted Cross as claiming Jones instigated the odometer change, and defense witnesses testified Jones bragged about instigating the odometer change. Cross himself claimed Jones was the instigator.

"substantial evidence upon which a jury could reasonably conclude that all the elements of [the] offense [of causing odometer tampering in violation of R.C. 4549.42(A)] ha[d] been proven beyond a reasonable doubt." *Eley, supra,* syllabus, paraphrased.

The second assignment of error is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., and WILSON, J., concur.