BOARD OF COUNTY COMMISSIONERS OF DELAWARE COUNTY, APPELLEE,
*v.* CITY OF COLUMBUS, APPELLANT.

[Cite as Bd. of Delaware Cty. Commrs. *v.* Columbus (1986),
26 Ohio St. 3d 179.]

(No. 85-961—Decided August 25, 1986.)

*W. Duncan Whitney,* prosecuting attorney, for appellee.

*Ronald J. O'Brien,* city attorney, *Riley, Ucker & Lavinsky Co., L.P.A.,* and *Daniel W. Drake,* for appellant.

*Per Curiam.* The main question to be decided on this appeal is whether the city, acting pursuant to its Article XVIII "utility" powers, may construct the proposed sewer lines here at issue without first complying with the limitations contained in R.C. 6117.01.

The provisions of the Ohio Constitution primarily concerned in this cause are:

Section 4 of Article XVIII:

"Any municipality may acquire, construct, own, lease and operate

within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service. The acquisition of any such public utility may be by condemnation or otherwise, and a municipality may acquire thereby the use of, or full title to, the property and franchise of any company or person supplying to the municipality or its inhabitants the service or product of any such utility."

Section 6 of Article XVIII:

"Any municipality, owning or operating a public utility for the purpose of supplying the service or product thereof to the municipality or its inhabitants, may also sell and deliver to others any transportation service of such utility and the surplus product of any other utility in an amount not exceeding in either case fifty per cent of the total service or product supplied by such utility within the municipality, provided that such fifty per cent limitation shall not apply to the sale of water or sewage services."

R.C. 6117.01 provides, in material part:

"For the purpose of preserving and promoting the public health and welfare, boards of county commissioners may by resolution lay out, establish, and maintain one or more sewer districts within their respective counties, outside of municipal corporations, and may have a registered professional engineer make such surveys as are necessary for the determination of the proper boundaries of such district. * * * The board may adopt, publish, administer, and enforce rules for the construction, maintenance, protection, and use of sewers and sewer improvements in its county outside of municipal corporations, and of sewers and sewer improvements within municipal corporations in its county wherever such sewers are constructed or operated by such board or discharge into sewers or sewage treatment plants constructed or operated by such board, including the establishment and use of connections. Such rules shall not be inconsistent with the laws of this state or the rules of the director of environmental protection. No sewers or sewage treatment works shall be constructed in any county outside of municipal corporations by any person, firm, or corporation until the plans and specifications for the same have been approved by the board, and any such construction shall be done under the supervision of the county sanitary engineer. * * *"

This court has often held that the General Assembly cannot impose any restrictions or limitations upon the power to "operate" a public utility granted to a municipality by Article XVIII of the Ohio Constitution. See, e.g., *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313 [4 O.O.2d 369].[1] However, appellee contends, and we agree, that the power to regulate sewer districts "[f]or the purpose of preserving and promoting

---

[1] "The opinions and syllabi in some of the cases referred to in this opinion have language in them tending to indicate that the General Assembly *may merely regulate* though not restrict or limit such municipal power. However, every regulation limits or restricts

the public health and welfare," under R.C. 6117.01, constitutes a valid exercise of state police power. As we held in *Columbus* v. *Teater* (1978), 53 Ohio St. 2d 253, 257 [7 O.O.3d 410], "[t]he police power and the power of local self-government are constitutional grants of authority equal in dignity."

Therefore, R.C. 6117.01 is not facially violative of Sections 4 or 6 of Article XVIII of the Constitution of Ohio. Rather, the authority enjoyed by the city to construct sewer lines outside its corporate limits and the regulating authority of the county are of equal dignity. In such instance, "the judiciary must [ultimately] determine the facts in such controversies, balance the rights of the * * * [county] against those of the municipality and endeavor to protect the respective interests of each. * * * [T]he outcome of the constitutional argument involved will depend upon the facts and circumstances of the case." *Teater, supra,* at 261.

The courts below factually determined that the city's proposed sewer extension was not a "public utility" since it did not serve the inhabitants of the city, but only served the general public. Accordingly, they found that the utility powers constitutionally granted in Section 4, Article XVIII of the Ohio Constitution were not invoked and the general law set forth in R.C. 6117.01 prevailed.

The threshold question requires review.

A sewerage system owned and operated by a municipality for the benefit of its inhabitants is embraced within the term "public utility" in Sections 4 and 6 of Article XVIII of the Ohio Constitution. *Britt* v. *Columbus* (1974), 38 Ohio St. 2d 1 [67 O.O.2d 1]. In *Britt,* Judge Stephenson, writing for the court, stated at 6:

"The importance to the City of possessing such authority by constitutional, rather than legislative, grant is that each of the constitutional sections relied upon has been held by this court to be self-executing and if eminent domain authority for the purposes here claimed exists by virtue of such sections the authority conferred is beyond the pale of the General Assembly to limit, restrict, condition, or otherwise control."

Although the *Britt* court found that the constitutionally granted utility power did not include the right of eminent domain over property located outside the corporate limits of a municipality, it did establish the self-executing nature of the utility powers of the city of Columbus which includes the operation of a sewerage system beyond the corporate limits of the city. Judge Stephenson in *Britt, supra,* further held at 8:

"Section 4, Article XVIII, is a constitutional grant of power to a municipality to 'acquire, construct, own, lease and operate within or

---

something. Hence, if a so-called mere statutory regulation of the General Assembly limits or restricts a power conferred by Sections 4 or 6 of Article XVIII of the Constitution, it can be no more effective than any other statutory limitation or restriction of such a power." (Emphasis *sic.*) *State, ex rel. McCann,* v. *Defiance* (1958), 167 Ohio St. 313, 316-317 [4 O.O.2d 369].

without its corporate limits, any public utility *the products or service of which is or is to be supplied to the municipality or its inhabitants.*' A sewerage system owned and operated by a municipality for the benefit of its inhabitants is a public utility within the meaning of 'public utility' in Sections 4 and 6, Article XVIII. *Mead-Richer* v. *Toledo* (1961), 114 Ohio App. 369 [19 O.O.2d 389]. That it was so intended is evidenced by the removal of sewage services from the 50 percent limitation in Section 6 by amendment in 1959." (Emphasis *sic*.)

Appellant herein claims that Sections 4 and 6, Article XVIII of the Ohio Constitution authorize it to extend its sewerage system to replace an existing independent system which it operates on property owned by the municipality and which property is located at the Columbus Zoo.

Whether or not the zoo located outside the corporate limits serves the inhabitants of the city does not require in-depth consideration, although it was a pivotal question upon which the courts below decided the issue. The proposed extension of sewer services to the zoo complex is authorized, whether or not the inhabitants of the city are directly or indirectly served by the operation of the Columbus Zoo.

The constitutional provision is in the disjunctive when it provides services "to the municipality or its inhabitants." We conclude that the municipally owned property located outside the corporate boundaries, if it is to be served by a sewerage system, falls squarely within the constitutionally granted "utility" powers of the city. The sewerage system serves the municipality as it serves municipally owned property; the functions performed thereon are deemed to be appropriate municipal functions of the city.

Here, municipal ownership of the land and any reasonable need to provide sewer service to the land are sufficient to invoke the constitutionally granted municipal "utility" powers.

Having concluded that the city's proposal to extend the sewer service and connect the new complex to the existing sewerage system of the city is within the power of the city of Columbus, it is necessary to address the origin of those powers conflicting with those sought to be exercised by the city.

The county asserts that by enactment of R.C. 6117.01 the legislature has delegated to it the privilege to exercise the state police power which is paramount, and since said section requires approval by the county commissioners, it is entitled to injunctive relief.

It is fundamental that the protection and preservation of the public health is a prime governmental concern and thus a function of the state. *State, ex rel. Mowrer,* v. *Underwood* (1940), 137 Ohio St. 1 [17 O.O. 298]. It is equally well-established that the state can directly exercise its police power concerning public health or it may delegate that power to other governmental agencies. *Ex parte Company* (1922), 106 Ohio St. 50; *DeMoise* v. *Dowell* (1984), 10 Ohio St. 3d 92, 93-94.

"While it is true that the legislature has delegated some authority regarding sewers under R.C. Chapter 6117, the General Assembly has also enacted an alternative and more comprehensive scheme of delegation of authority concerning public health." *DeMoise, supra,* at 94.

Although Justice William B. Brown in *DeMoise* was writing in regard to the relationship of R.C. Chapter 6117 and R.C. 3701.13, the analogy to the county's right to establish a sewer district and regulate the same is applicable to this cause. The state has enacted an alternate and more comprehensive scheme by the establishment of the Ohio Environmental Protection Agency in R.C. Chapters 6111[2] and 3745.[3]

The legislature by its enactment of R.C. Chapter 6117 delegated a portion of the state's constitutionally derived police power to the boards of county commissioners giving them the authority to establish sewer districts within their respective counties for the purposes of preserving and promoting the public health and welfare. The enactment of R.C. Chapter 6117 is a limited grant of authority to the political subdivisions for the purpose of preserving and promoting public health and welfare within the counties. R.C. 6117.01, reflecting the statutory scheme for the creation of sewer districts within the counties of the state, authorizes the board of county commissioners to adopt, publish and administer and enforce rules for the construction, maintenance, protection and use of sewers and sewer improvements within the sewer districts so established.

To implement such a beneficial program, the legislature has granted some supervisory authority. The authority of the county commissioners does not extend to actions taken to compel a municipality to participate in a sewer district. R.C. 6117.51 specifically provides that any discharge authorized under a permit issued by virtue of R.C. 6111.03 cannot be required to connect to the county sewer district.

The record here clearly indicates that the county considers its irreparable damage to be based upon the need to have the user fees generated by the zoo complex finance the sewer district's anticipated expanded services into the Scioto River basin. It would appear that the county is endeavoring to do through this case what it is not permitted to do statutorily.

The application of those provisions of R.C. 6117.01 in this case requiring approval by the board of commissioners before sewers or sewage treat-

---

[2] The legislature in the exercise of its retained constitutional police power deemed fit to enact R.C. Chapter 6111, which effectively establishes statewide control through the OEPA over waste-water or sewage systems.

[3] R.C. 3745.01, which creates the OEPA, provides that the agency, under the supervision of a director, shall administer laws pertaining to the prevention, control and abatement of air and water pollution, public water supply, comprehensive water resource management planning, and the disposal and treatment of solid wastes, hazardous waste, sewage, industrial waste and other wastes.

ment works can be constructed within a countywide sewer district would be in conflict with the state police power as exercised by the OEPA.[4]

A requirement that the county commissioners approve the plans and specifications for new sewers or sewage treatment works implies the power of the county to withhold or deny approval of such proposed construction and, as demonstrated by the record in this cause, submission of such plans for the extension of the Columbus sewage system into the real estate owned by the municipality would surely fail to find approval by the Delaware County Commissioners.

Since said plans and construction proposed by the city of Columbus have been examined and approved by the OEPA and a permit for such construction was granted, it becomes apparent that the countywide sewer district and the Commissioners of Delaware County would be exercising a delegated portion of the state police power in a manner inconsistent with the state police power as exercised by the OEPA.

In a proper case the state's exercise of its constitutionally derived police power must be of a higher quality than those state police powers delegated by legislative enactment to a political subdivision of the state. The statute granting the authority to create sewer districts within the county cannot be in conflict with other legislative enactments which establish a superior regulatory scheme to be administered by a state agency. Appellee herein recognized this principle and made substantial efforts to defeat the city's proposal by resisting the granting of the OEPA permit to the city.[5] It therefore appears that if the action of the state in its exercise of police power is superior in effect to that of the delegated power of the county, great weight must be given to the approval granted to the city by the OEPA as we endeavor to determine and balance the powers and rights respectively of the parties to this action.

If the city establishes that it is acting under a constitutional grant of power, it would be self-executing and the authority conferred is beyond the pale of the General Assembly to limit, restrict, or otherwise control. Section 4, Article XVIII; *Swank* v. *Shiloh* (1957), 166 Ohio St. 415 [2 O.O.2d 401]; Section 6, Article XVIII; *State, ex rel. McCann,* v. *Defiance, supra.*

Under this scenario, but for the provision of R.C. 6117.01, and that portion which requires the county's approval of the city plans, it is quite

---

[4] R.C. 6117.01 specifically provides that "[s]uch rules shall not be inconsistent with the laws of this state or the rules of the director of environmental protection."

[5] The record in this cause indicates that the county herein exercised its right under R.C. 3745.04 to appeal the granting of a permit to the city for the construction of the proposed sewer line to the Environmental Board of Review which vacated the grant of the permit. Upon further appeal by the city and the Director of Environmental Protection, the Court of Appeals for Franklin County in *Bd. of Delaware Cty. Commrs.* v. *Columbus* (1985), 26 Ohio App. 3d 6, while upholding the validity of the director's issuance of the permit to this county, did not address similar constitutional questions as those raised in this cause.

clear that the state exercise of its police power and the constitutional exercise of the "utility" power of the city are in accord, and the respective interests of the state and of the city are one.

As stated, it is necessary to apply the balancing test as set forth in *Teater, supra.* The state police power may preempt the municipal authority subject to the balancing test specified therein.

When the rights of the respective parties hereto are balanced, it is clear that the city must prevail. The waste-water treatment plant presently operated by the Delaware County Sewer District is located in the central part of Delaware County. No service lines extend from this plant to the southwestern part of Delaware County where the zoo and amusement park are located. Also, the line contemplated by Delaware County, by geographic necessity, would have to be approximately three times longer than the proposed improvement which the city is ready to construct. Under these facts, we can only conclude that the county's police power authority under R.C. 6117.01 must here yield to the city's Article XVIII power, and the grant of police power to the OEPA.

In view of the foregoing, the judgment of the court of appeals is reversed.

*Judgment reversed.*

KOEHLER and C. BROWN, JJ., concur.

C. BROWN, DOUGLAS and WRIGHT, JJ., concur in judgment separately.

LOCHER, J., concurs in judgment only.

CELEBREZZE C.J., and HOFFMAN, J., dissent.

HOFFMAN, J., of the Fifth Appellate District, sitting for SWEENEY, J.

KOEHLER, J., of the Twelfth Appellate District, sitting for HOLMES, J.

DOUGLAS, J., concurring. I concur in the judgment of the court. I write separately to emphasize the importance of recognizing that the Ohio Environmental Protection Agency ("OEPA") is vested with exclusive jurisdiction to regulate construction of a municipal sewer line within a countywide sewer district.

The General Assembly, in its wisdom, through R.C. Chapter 3745, has established the OEPA. In addition, the legislature, through R.C. Chapter 6111, provides for water pollution control by the OEPA and this includes the right to regulate sewage-disposal systems, such as the treatment plant at the zoo, as well as the sewer line proposed by appellant which is at issue in this case. The broad powers granted the OEPA and specifically in R.C. 6111.46 makes, in my judgment, the jurisdiction of the OEPA exclusive.

In the case before us, the OEPA, by permit, has authorized the operation of the zoo waste-water treatment system and the proposed force main, lift station and related improvements. This having been accomplished, the OEPA has exercised its exclusive jurisdiction and the trial court should have granted appellant's motion to dismiss on jurisdictional grounds. See *State, ex rel. Williams,* v. *Bozarth* (1978), 55 Ohio St. 2d 34 [9 O.O.3d 19]. Any suggestion, herein or otherwise, to the contrary would tend to weaken the sound, workable regulatory scheme established by the legislature. Such a practice should not be countenanced or permitted.

C. BROWN and WRIGHT, JJ., concur in the foregoing opinion.