OPINION
Defendant-appellant, Duane R. Dickens, appeals the decision of the Clermont County Court of Common Pleas adjudicating him to be a sexual predator pursuant to R.C. 2950.09(C)(1). We affirm.
On March 3, 1992, appellant was convicted of one count of rape, a violation of R.C. 2907.02(A)(1)(b), and one count of felonious sexual penetration, a violation of R.C. 2907.12(A)(1)(b). Both offenses involved a three-year-old girl. The felonious sexual penetration offense was merged with the rape offense for purposes of sentencing, and appellant was sentenced to serve a ten to twenty-five year term of incarceration. On July 9, 1998, the Ohio Department of Rehabilitation and Correction recommended that appellant be classified as a sexual predator.
On August 31, 1998, the trial court held a classification hearing to determine whether appellant was a sexual predator. The trial court found that appellant had been convicted of rape, and that appellant had refused to admit that he had committed any offense. The trial court also considered the tender age of the victim. Based upon these findings, the trial court found that appellant was likely to reoffend. On September 2, 1998, the trial court filed its entry finding that appellant was a sexual predator. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1:
R.C. CHAPTER 2950 VIOLATES THE OHIO CONSTITUTION.
In his first assignment of error, appellant contends that R.C. Chapter 2950, Ohio's version of "Megan's Law," violates Article I, Section 1 of the Ohio Constitution. Appellant relies upon the recent decision of the Eleventh District Court of Appeals in State v. Williams
(Feb. 2, 1999), Lake App. No. 97-L-191, unreported, discretionary appeal granted (1999), 86 Ohio St.3d 1406, as authority for the proposition that the statute unreasonably interferes with the inalienable rights of individuals to life, liberty, property, happiness, and safety.
R.C. Chapter 2950 contains three primary provisions: classification, registration, and notification. R.C. 2950.09 provides a classification system for convicted sex offenders. Under this system, the trial court may classify a convicted sex offender as (1) a sexually oriented offender, (2) a habitual sex offender, or (3) a sexual predator. In those cases where the offender is convicted of a violent sexually oriented offense and a specification alleging that the offender is a sexually violent predator, the label of "sexual predator" attaches automatically. R.C. 2950.09(A). In all other cases, the trial court may designate the offender as a "sexual predator" only after a hearing where the offender is entitled to be represented by counsel, testify, and call and cross-examine witnesses. R.C.2950.09(B)(1).
The registration provision of R.C. Chapter 2950, R.C.2950.04, applies to all offenders in all three classifications. Offenders must register with their county sheriff upon their release from prison. When registering, the offender must provide a current address, the name and address of his or her employer, a photograph, and any other information required by the Bureau of Criminal Identification and Investigation. R.C. 2950.04(A) and (C).
Once registered, offenders must periodically appear before the local sheriff and verify the residential address and other information given upon registration. R.C. 2950.06. How often an offender must verify this information depends upon the classification to which the offender belongs. Sexually oriented offenders must verify the information annually for ten years. R.C. 2950.06(B)(2) and 2950.07(B)(3). Habitual sexual offenders must do so annually for twenty years. R.C. 2950.06(B)(2) and2950.07(B)(2). Sexual predators must verify the information every ninety days for life. R.C. 2950.06(B)(1) and 2950.07(B)(1). Sexual predators are released from these requirements only upon a court determination that the offender is no longer a sexual predator. R.C. 2950.07(B)(1). If the underlying offense was a felony, failure to comply with the registration and verification provisions is a felony. R.C. 2950.06(G)(1) and 2950.99.
R.C. Chapter 2950 includes extensive community notification provisions. These provisions apply to all sexual predators and to those habitual sexual offenders who the trial court determines should be subject to notification. R.C. 2950.10(B) and2950.11(F). The sheriff with whom the offender has most recently registered must notify specified community members within seventy-two hours or seven days after the offender has registered. R.C. 2950.11(A), (D)(1) and (D)(2).[1] Certain victims, upon request, are to be notified when specified offenders change address. R.C. 2950.10(A)(2). The community notice must include the offender's name and address, the sexually oriented offense for which the offender was convicted, and a statement that the offender has been classified as a sexual predator or habitual sexual offender. R.C. 2950.11(B). All information possessed by the sheriff which must be included in the notice is a public record open to inspection. R.C. 2950.11(E).
Enactments of the General Assembly are presumed to be constitutional, and before a court may declare any enactment unconstitutional, "it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible." State v. Cook (1998), 83 Ohio St.3d 404, 409, quoting State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. Any challenged enactment is "entitled to the benefit of every presumption in favor of its constitutionality." Cook, 83 Ohio St.3d at 409. All reasonable doubts as to constitutionality must be resolved in the statute's favor. Desenco, Inc. v. Akron (1999), 84 Ohio St.3d 535, 538.
Article I, Section 1 of the Ohio Constitution limits the extent to which the state may exercise its police powers. This provision provides:
 All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.
As noted in Benjamin v. Columbus (1957), 167 Ohio St. 103, paragraph five of the syllabus:
 [A]lmost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, within the meaning of Article I of the Ohio Constitution, or involve an injury to a person within the meaning of Section 1 of Article XIV of the Amendments to the Constitution of the United States[.]
Nonetheless, an exercise of the police power
 having such an effect will be valid if [1] it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and if [2] it is not unreasonable or arbitrary.
 Id.
The determination of whether an exercise of police power bears a real and substantial relationship to the public health, safety, morals or general welfare is to be determined initially by the General Assembly. DeMoise v. Dowell (1984), 10 Ohio St.3d 92,96-97. A court may not invalidate an exercise of the police power unless it can be said that the General Assembly's determination is clearly erroneous or that the exercise is a clear and palpable abuse of that power. Id.; State v. Douglas (1989), 66 Ohio App.3d 788,792. An exercise of the police power is reasonable under the second prong of the Benjamin test where the exercise of power is "suitable to the end in view, [is] impartial in operation and not unduly oppressive upon individuals, [has] a real and substantial relation to [its] purpose, and [does] not interfere with private rights beyond the necessities of the situation." Froelich v.Cleveland (1919), 99 Ohio St. 376, paragraph three of the syllabus.
R.C. Chapter 2950 is clearly an exercise of the state's police powers. The statute confronts the danger posed by repeat sex offenders who "represent a genuine threat to public safety. The General Assembly was right to have tried to combat that danger." Williams. As noted in Cook:
 [T]he General Assembly's purpose behind R.C. Chapter 2950 is to promote public safety and bolster the public's confidence in Ohio's criminal and mental health systems. * * * Promulgating laws to guard society's health and safety is among those legitimate police powers inherent in government. * * * R.C. Chapter 2950 * * * seeks to "protect the safety and general welfare of the people of this state," which is a "paramount governmental interest." R.C. 2950.02(B) and (A)(2).
 83 Ohio St.3d at 417. Therefore, R.C. Chapter 2950 bears a real and substantial relation to the legislature's legitimate goal of protecting the public. See Cook at 421, citing Miami Cty. v. Dayton (1915), 92 Ohio St. 215, 223-224.
Appellant contends that R.C. Chapter 2950 fails the second prong of the Benjamin test, arguing that the statute is an unreasonable infringement of his personal liberties. Although this issue was not addressed in Cook, we find that language in that decision strongly suggests that the statute is a reasonable exercise of the police powers, and that it is not in conflict with Article I, Section 1, of the Ohio Constitution.
The registration and verification provisions included in R.C. Chapter 2950 have precedent, and registration has long been a valid regulatory technique. Cook at 418. The former version of R.C. Chapter 2950, enacted in 1963, required that habitual sexual offenders register with their county sheriff. Former 2950.02. Only the frequency and duration of the registration requirements have changed and the number of classifications has increased from one to three. Cook at 411.
Such changes are not unreasonable in light of the growing awareness surrounding sex offenders. The new classifications and their respective registration and notification provisions provide law enforcement authorities with greater flexibility in addressing the dangers presented by sex offenders. The new classifications and their corresponding requirements are structured according to the severity of the offender's conduct. Thus, an offender classified as a sexual predator will be subject to more stringent provisions than a sexually oriented offender who committed a less severe offense.
The registration and verification provisions are de minimus
procedural requirements necessary to achieve the goals of R.C. Chapter 2950. Cook at 412. The high rate of recidivism among sex offenders demands that strong steps be taken to protect the public from those most likely to reoffend. The registration and verification provisions serve this purpose by giving law enforcement agencies the information necessary to monitor sex offenders found likely to reoffend. Id. at 421. These requirements "objectively serve the remedial purpose of protecting the local community." Id. at 417. In Cook, the court determined that these provisions are a "narrowly tailored attack on this problem," applying only to the worst offenders, sexual predators and those habitual sexual offenders that the trial court determines must be subject to the disputed provisions. Id.
Appellant contends that R.C. Chapter 2950 is unreasonable because it requires that a sexual predator verify his address, in person, every ninety days. Appellant argues that such a requirement is onerous because such verification could be accomplished through the mail. As noted in Cook, the frequency an offender must verify his address is based upon which classification is applied to the offender, and this judgment of the General Assembly is reasonable:
 [T]he more frequent verification requirement is not excessive, but is justified to enhance law enforcement's ability to monitor the whereabouts of the most dangerous classification of sexual offender. Further, sexual predators, classified as such by a court of law, have the opportunity to submit evidence to prove that their label is no longer justified and thereby have the label and its obligations removed. R.C. 2950.09(D)(1).
 Similarly, address verification for habitual sexual offenders and sexually oriented offenders is commensurate with the level of recidivism and dangerousness of these respective classifications.
* * *
 Thus, we find that the address verification requirements of R.C. Chapter 2950 are narrowly tailored to comport with the respective danger and recidivism levels of the different classifications of sex offenders.
 Id. at 421-422.
The registration and verification provisions reflect the seriousness of sex offenses and the dangers which the General Assembly seeks to combat. We find that the registration and verifications provisions of R.C. Chapter 2950 are reasonable under the second prong of the Benjamin test.
Appellant contends that the notification provisions are an unreasonable invasion of his privacy, and that they unreasonably result in infringements of liberties guaranteed by Article I, Section 1, of the Ohio Constitution. Appellant relies upon alleged potential harms to sex offenders that might give rise to constitutional violations. These harms include potential harassment of sex offenders leading to an invasion of privacy and prospective interference with the offender's right to property and employment. These claims have yet to be supported by empirical evidence, and to declare a statute unconstitutional on the basis of a mere possibility of future harm contradicts the tenet that duly enacted statutes are entitled to a strong presumption of constitutionality. See Cook, 83 Ohio St.3d at 409; Williams, Lake App. No. 97-L-191 (Ford, P.J., dissenting).
These issues were addressed in Cook, wherein the court discussed the claim that the notification provisions might lead to damage to reputation and to unwarranted community harassment. The court recognized that harsh personal results could come out of the classification of the sex offender and the subsequent community notification. Nonetheless,
 the harsh consequences [of] classification and community notification come not as a direct result of the sexual offender law, but instead as a direct societal consequences of [the offender's] past actions.
 Id. at 413, quoting State v. Lyttle (Dec. 22, 1997), Butler App. No. CA97-03-060, unreported. Furthermore, the required dissemination of registered information to selected persons "is an objectively reasonable measure to warn those in community who are most likely to be potential victims." Id. at 417. Even though such dissemination of information may be harmful to the offender's reputation, "the importance of public access prevails over the detrimental effect that the release of derogatory information may have on a defendant." Id. at 419.
Appellant contends the method of dissemination is not a reasonable means of achieving the purpose of the notification provisions, i.e., allowing the community to protect its children and other potential victims from sex offenders. Appellant alleges the information disseminated does not reasonably further the purpose of the notification. Appellant asserts that since R.C. Chapter 2950 does not require that his photograph be included in the notification, the notice will not aid the community in protecting itself. Appellant further asserts that the limited information provided in the notice is an invasion of his privacy, even though his photograph is not provided in the notice. As noted by Presiding Judge Ford in Williams, this analysis contains an inherent contradiction. "[I]t seems that [appellant] condemns Megan's Law [R.C. Chapter 2950] for both being too invasive but paradoxically not as intrusive in some aspects as a cursory review would suggest." Williams, (Ford, P.J., dissenting).
Appellant's analysis fails to consider the import of Cook on this point. The right to public access "provides historical support for the notification provisions in R.C. Chapter 2950."Cook, 83 Ohio St.3d at 419. The General Assembly has determined that limited public notice of a sex offender's presence will allow the community to best protect any potential victims. That the General Assembly failed to require every possible piece of information which may aid the community does not make the notification provisions unconstitutional.
In light of the purposes of R.C. Chapter 2950, limited knowledge is given to the community in a means which is reasonable and which does not interfere with appellant's personal rights. The information disseminated is a matter of public record. R.C.2950.11(E). As such, there is no unwarranted or arbitrary infringement of appellant's rights or privacy:
 The purpose of the notification provisions, which is to protect the public, must prevail over any ancillary, detrimental effect that the limited dissemination of the registered information may have on a sex offender.
 Cook at 419.
Appellant contends that the number of persons who are to be notified of the sex offender's presence is too broad and can only result in the offender being harassed and the offender's rights being infringed. The dissemination of the information required by R.C. 2950.11 is restricted to those most likely to have contact with the offender and to those who are entrusted with the care of particularly vulnerable potential victims. R.C. 2950.11(A). The notification provisions are "narrowly tailored to disseminate information only to those persons necessary in order to protect the public." Cook at 422.
Although we recognize that the registration, verification, and notification provisions may cause some potential detriment to registrants, the sting of possible public censure will not make a duly enacted statute unconstitutional. See id. at 423. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT LACKED CLEAR AND CONVINCING EVIDENCE TO CLASSIFY THE APPELLANT A SEXUAL PREDATOR.
In his second assignment of error, appellant contends that the trial court's determination that he is a sexual predator is not supported by clear and convincing evidence. Appellant argues that the trial court failed to find sufficient evidence indicating a tendency towards recidivism.
R.C. 2950.09(C)(2) specifically provides that a determination of whether an offender is a sexual predator must be supported by clear and convincing evidence. Thus, we must review the record to determine whether there is clear and convincing evidence to support the trial court's determination. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance of the evidence," it is less than evidence "beyond a reasonable doubt." State v. Danby
(1983), 11 Ohio App.3d 38, 41, citing Cross at 477.
A reviewing court will reverse, as a matter of law, a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented.Cross at 479. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court abused its discretion by deviating from the statutory criteria. See In re William S. (1996), 75 Ohio St.3d 95, 99.
At appellant's classification hearing, the prosecutor presented evidence of the nature of appellant's conduct which resulted in his conviction for sexually-oriented offenses. The trial court discussed the findings which supported its decision to adjudicate appellant a sexual predator. The trial court noted appellant's conviction was for two sexually oriented offenses. The trial court also found that appellant has continually denied his crime and its severity. The trial court also noted that the victim of appellant's crime was only three years old at the time. Finding that the state presented clear and convincing evidence that appellant was a sexual predator, the trial court adjudicated him a sexual predator.
After thoroughly reviewing the transcript of the classification hearing and the evidence presented, we are satisfied that the record contains clear and convincing evidence to support the trial court's determination, and that the trial court properly considered the factors contained in R.C.2950.09(B)(2) in making its determination. See State v. Striley
(Dec. 29, 1997), Clermont App. No. CA97-05-064, unreported. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and VALEN, J., concur.
[1] R.C. 2950.11(A) provides that notice must be given to the following persons:
 (1) All occupants of residence adjacent to the offender's place of residence that are located within the county served by the sheriff and all additional neighbors of the offender who are within any category that the attorney general * * * requires to be provided notice and who reside within the county served by the sheriff;
 (2) The executive director of the public children services agency * * * that has jurisdiction within the specified geographical notification area and that is located within the county served by the sheriff;
 (3) The superintendent of each school board of education of a school district that has within the specified geographical notification area and that is located within the county served by the sheriff;
 (4) The appointing or hiring officer of each chartered nonpublic school located within the specified geographic notification area and within the county served by the sheriff or of each other school located within the specified geographical notification area and within the county served by the sheriff and that is not operated by a board of education described in division (A)(3) of this section;
 (5) The director, head teacher, or elementary principal of each preschool program governed by Chapter 3301 of the Revised Code that is located within the specified geographical notification area and within the county served by the sheriff;
 (6) The administrator of each child day-care center or type A family home that is located within the specified geographical notification area and within the county served by the sheriff, and the provider of each certified type B family day-care home that is located within the specified geographical notification area and within the county served by the sheriff;
 (7) The president or other chief administrative officer of each institution of higher education, as defined in section 2907.03 of the Revised Code, that is located within the specified geographical notification area and within the county served by the sheriff, and the chief law enforcement officer of the state university law enforcement agency or campus police department * * * that serves the institution.
 (8) The sheriff of each county that includes any portion of the specified geographical notification area.
 (9) If the offender resides within the county served by the sheriff, the chief of police, marshal, or other chief law enforcement officer of the municipal corporation in which the offender resides, or, if the offender resides in an unincorporated area, the constable or chief of the police department or police district police force of the township in which the offender resides.