OPINION
{¶ 1} This administrative appeal arises from the Trumbull County Court of Common Pleas, wherein the court affirmed appellee, Trumbull County Board of Health's ("TCBH"), issuance of three permits for off-lot household sewage disposal systems.
 {¶ 2} On January 17, 2002, Jerre J. Hentosh, Sr. and Donah G. Hentosh acquired a sixty-acre parcel of land in Champion Township, Trumbull County. On March 18, 2002, they split the sixty-acre parcel into three parcels. The first parcel was deeded to Jerre J. Hentosh, Sr. The second parcel was deeded to Donah G. Hentosh. The third parcel was deeded to the Hentosh Family Revocable Living Trust. Also on March 18, 2002, Donah G. Hentosh split her parcel into smaller lots and deeded these lots to herself, including a 0.565-acre lot. The trust also divided its parcel into smaller lots and deeded two 0.565-acre lots to itself.
 {¶ 3} On June 18, 2002, Donah G. Hentosh transferred her 0.565-acre lot to intervening appellee, Michael P. Hentosh, which subsequently became known as 663 Center Street West. The Trust then transferred its two 0.565-acre lots to intervening appellees, Thomas Governor and Jerre J. Hentosh, Jr. Those lots became known as 673 and 683 Center Street West, respectively.
 {¶ 4} Subsequently, duplexes were constructed on each lot. On behalf of all three lot-owners, Jerre J. Hentosh, Jr. applied to TCBH for permits that would authorize the construction and installation of off-lot household sewage disposal systems to serve each duplex. An off-lot system disposes of household sewage by discharging it from the property into a nearby water of the state, where it is subsequently carried off through tributaries. This system is in contrast to an on-lot sewage disposal system, where the sewage is treated on the property and dissipates into the ground. Each of the three lots required an off-lot system to serve each six-bedroom duplex due to the small size of the properties. Attached to the permit applications were hand-drawn sketches of the proposed sewage systems, indicating the sewage being discharged to a ditch at the rear of the adjacent lots. Hearings on the applications occurred on August 21, 2002, and September 18, 2002.
 {¶ 5} At the August 21st TCBH meeting, sworn testimony was taken from Champion residents Linda Reese and Denise O'Shaughnessy, both of whom testified as to concerns regarding the duplexes being built by appellee, Jerre Hentosh, Jr. and his company, Hentosh Builders. Both requested that TCBH require the lots at issue to be increased in size to accommodate on-lot sewage disposal as opposed to the off-lot disposal because of the current nuisance existing with other off-lot sewage systems.
 {¶ 6} O'Shaughnessy testified that she had contacted the Ohio Environmental Protection Agency ("EPA") concerning the fact that water was not flowing in the current ditches and the sewage was left pooling in the ditches causing odor and an increase in mosquitoes.
 {¶ 7} Testimony was also given by Frank Migliozzi, Director of Environmental Health for TCBH. Migliozzi testified that he had not yet issued permits for the lots because of the nuisance issue. He testified that although his staff had not made a formal determination on the issue of whether a potential nuisance could exist, he had gone to see the ditch where the off-lot sewage system would drain into and stated, "from what I observed today, * * * [it] has the potential of creating a nuisance." He also stated, "[t]here is the potential there for the existence of contaminated surface water." Migliozzi also presented a letter to TCBH from the EPA, which stated the off-lot sewage systems currently existing across the street from the proposed systems sought by appellees were already creating a public nuisance.
 {¶ 8} Brian Kochunas, a property-owner who lives approximately a quarter of a mile down the road from the lots at issue, testified, "I guess my concern is that I do agree with [Migliozzi]. I've lived in the area for 12 years, and there is standing water in those ditches that sits there. Even just rain water, in my ditches, stays for — you know, a week or so before it dissipates. I got mosquitoes galore. Don't need more mosquitoes. We don't need any more standing water in that area[.]"
 {¶ 9} Jerre Hentosh, Sr. testified that he and his son had built several homes in the area and had received permits in the past for off-lot sewage systems without a problem.
 {¶ 10} Jason Earnhart, Trumbull County Assistant Prosecuting Attorney, testified to the lot sizes and the need for off-lot sewage systems because the lots were too small in size to accommodate on-lot sewage disposal.
 {¶ 11} As the meeting concluded, it was determined that the lots should be increased in size to one hundred twenty-five feet on the rear of the property, thereby accommodating on-lot sewage disposal and a variance would be granted to Hentosh, Jr. to permit on-lot sewage disposal on those lots as opposed to the original proposal of off-lot sewage disposal.
 {¶ 12} A second TCBH meeting was held on September 18, 2002. Erm Gomes from the EPA was present to discuss the issue of sewage disposal. It was acknowledged that the Trumbull County Planning Commission did not approve the on-lot sewage disposal for the lots at issue. Attorney Earnhart read a letter from the Planning Commission into the record. It stated, in pertinent part:
 {¶ 13} "Mr. Hentosh has blatantly skirted the spirit of our regulations by creating 11 lots from a 60 acre parcel, while attempting to give the image of only creating 4 lots twice and 3 lots once from the 60 acre tract. This conduct is appalling and an affront to every law abiding citizen in the county. The position of the Planning Commission, as told by me to Mr. Hentosh and his son, is to subdivide the acreage so that each duplex has at least 125 feet of frontage and all other lots will have at least 100 feet of frontage. I would also request, in the event Mr. Hentosh, or any other person or entity in the future, be granted a septic permit for any off-lot systems, that he also is required to obtain a National Pollutant Discharge Elimination System Permit, in accordance with Ohio Revised Code Section 6111.04. * * * This permit is a state requirement for anyone, including private homes, to discharge to waters of the state."
 {¶ 14} Thus, the Planning Commission rejected Hentosh's proposal to enlarge the lots, as they still were not in accordance with the local regulations regarding subdivisions. The Commission also advised that Hentosh and all future applicants seeking off-lot sewage permits, be required to get a National Pollution Discharge Elimination System ("NPDES") permit, demonstrating that the proposed system is in compliance with the Ohio Sanitation Code.
 {¶ 15} Mr. Gomes testified that no one else in the county had been required to obtain a NPDES permit until that point. He also testified that it was the EPA position that off-lot sewage disposal systems should only be permitted as a last resort, when the lots did not permit an on-lot system because of their size or the quality of the soil.
 {¶ 16} Hentosh, Sr. averred that the lots at issue were compliant with the existing local requirements and had been issued in the past. Mr. Gomes posited that the current conditions of the off-lot sewage systems will be considered "illicit discharges" under the forthcoming state storm water regulations without a NPDES permit. Based on the foregoing testimony, the TCBH elected to issue the off-lot sewage disposal system permits for the three lots.
 {¶ 17} After the permits were issued, the EPA conducted several field tests of the ditches on State Route 305 and concluded the conditions were not in compliance with the existing Ohio Sanitation Code. At the next TCBH meeting on October 16, 2002, testimony was given by local residents and Gary Newbrough, Director of the Trumbull County Planning Commission. Newbrough testified that according to the EPA, the ditches, as they currently existed, without the additional off-lot disposal systems in place, were in violation of the Ohio Sanitation Code, and requested TCBH revoke the permit or stay the construction of the systems until the Attorney General could advise the TCBH on how to proceed. The TCBH said it would take the opinions under advisement yet never stayed nor revoked the permits.
 {¶ 18} On October 18, 2002, the EPA subsequently filed a notice of appeal of TCBH's decision to issue the permits, pursuant to R.C. 2506. The EPA also sought a stay of TCBH's issuance of the permits pending the appeal. The trial court subsequently granted the stay. On December 13, 2002, each of the three applicant/lot owners filed motions to intervene in the appeal, which the trial court granted. TCBH filed the transcript from the Board meetings as well as all applications and papers originally presented to TCBH prior to the issuance of the permits. Pursuant to R.C.2506.03, the trial court reviewed the TCBH decision based upon the documents submitted, without holding a hearing. The EPA filed its brief with the trial court on February 3, 2003, and TCBH filed its reply brief on February 24, 2003. Both parties subsequently filed reply briefs.
 {¶ 19} On July 22, 2003, the trial court issued a judgment entry, in which it affirmed TCBH's decision to issue the permits. The trial court did not state within the judgment entry its basis for affirming TCBH's decision. Therefore, the EPA requested findings of fact and conclusions of law, pursuant to Civ.R. 52. The trial court denied the request, concluding that it was not required to issue findings of fact and conclusions of law in an administrative appeal. The EPA subsequently filed this current appeal, presenting a single assignment of error:
 {¶ 20} "The trial court erred in upholding the Trumbull County Board of Health's issuance of off-lot household sewage disposal system permits to the applicants."
 {¶ 21} Pursuant to R.C. 2506.04, in reviewing the TCBH decision, the trial court could "find the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."
 {¶ 22} In reviewing the decision of the common pleas court, the court of appeals must apply an abuse of discretion standard. In other words, if the appellate court concludes, as a matter of law, the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence, the court of appeals must reverse the decision of the trial court.[1]
 {¶ 23} The EPA asserts the trial court abused its discretion when it affirmed the issuance of the permits for several reasons. Initially, the EPA asserts TCBH issued the permits in accordance with local sewage regulations which were not as stringent as the Ohio Sanitary Code.
 {¶ 24} Pursuant to Ohio Sanitary Code, in regulating household sewage disposal, there are certain minimum standards to which all local health departments must adhere to ensure all household sewage systems are properly installed.[2] The local health department can adhere to the Ohio Sanitary Code or adopt equivalent local regulations.[3] Local regulations are deemed equivalent only where they are as stringent or more stringent that the Ohio Sanitary Code.[4]
 {¶ 25} In the instant case, the EPA alleges the local regulations governing household sewage treatment are less stringent than the Ohio Sanitary Code and, thus, are void. Moreover, the EPA alleges the TCBH admitted its local regulations were not as stringent as the state regulations in its merit brief to the trial court. Specifically, TCBH stated in its brief, "[the TCBH] has taken steps since the filing of [this] appeal to improve its consideration of applications for home sewage disposal systems" including adopting "the Ohio Sanitary Code to replace [TCBH's] existing home sewage disposal regulations in any instance where [TCBH's] existing rules are less stringent than the State's regulation."
 {¶ 26} The EPA also cites four sections of the Ohio Sanitary Code that were violated by the issuance of the permits. First, the EPA alleges TCBH violated OAC 3701-29-02(G), which requires that before a permit for an off-lot sewage system can be granted, the applicant must have demonstrated: (1) the installation of an on-lot disposal system is not possible, and (2) the five conditions set forth in OAC 3701-29-02(G)(1) — (5) are met. The EPA alleges the applicants never satisfied the second requirement. OAC 3701-29-02(G) reads:
 {¶ 27} "Off-lot disposal of sewage effluent shall not be permitted except where the installation of an on-lot disposal system is not possible, as specified in rules 3701-29-10(B), and 3701-29-11(B) of the Administrative Code, and the following conditions are met:
 {¶ 28} "(1) When off-lot disposal of sewage effluent requires the crossing of adjacent properties to reach the point of discharge a recorded easement or the use of a legally established, publicly maintained drainage improvement from the dwelling lot line to the point of discharge shall be required.
 {¶ 29} "(2) Written permission to discharge sewage effluent from the person or persons in control of the property or properties at the point of discharge shall be required.
 {¶ 30} "(3) Sewage effluent quality as measured at the point of discharge in the system shall comply with current effluent standards established by the director of the Ohio environmental protection agency. In the event there are no applicable standards established by the director of the Ohio environmental protection agency, the following effluent standards shall apply:
 {¶ 31} "(a) Biochemical oxygen demand (five-day)-The arithmetic mean of two or more effluent samples taken at intervals of not less than twenty-four hours shall not exceed twenty milligrams per liter.
 {¶ 32} "(b) Suspended solids-The arithmetic mean of two or more effluent samples taken at intervals of not less than twenty-four hours shall not exceed forty milligrams per liter.
 {¶ 33} "(4) When test results indicate that the standards set forth in rule 3701-29-02(G)(3) are not being met or nuisances are being created, additional treatment devices may be required by the board of health.
 {¶ 34} "(5) All reasonable means shall be taken to minimize the amount of effluent discharged off the lot."
 {¶ 35} A review of the record from the TCBH hearing and the documents submitted to TCBH does not reveal any demonstration of the factors set forth in 3701-29-02(G)(1)-(5) or any equivalent requirement by the local regulations.
 {¶ 36} The EPA also alleges TCBH violated OAC 3701-29-02(H), which requires that lots on which household sewage disposal systems are to be installed shall be of suitable size to permit compliance with the Ohio Sanitary Code. The EPA alleges TCBH erred in not ensuring the applicants' lots were of adequate size to accommodate on-lot sewage systems.
 {¶ 37} The lots at issue had been divided, recorded, and conveyed prior to the applicants' submissions seeking permits for the sewage systems. At the September hearing, the parties concluded by agreeing to have the applicants enlarge the lots in an attempt to accommodate on-lot sewage disposal. At the October meeting, it was determined that the Planning Commission refused to allow for an increase in lot size. Thus, the TCBH was confined to the Planning Commission decision. Thus, it did not violate OAC 3701-29-02(H) in issuing the permits.
 {¶ 38} The EPA also alleges TCBH violated OAC 3701-29-02(A), which requires that off-lot permits shall only be granted when the design of the off-lot system complies with the Ohio Sanitary Code, including the installation of a filter system. TCBH did not require the applicants' system to include a filter, as one was not included in any sketches submitted to TCBH for approval. The TCBH stated in its reply brief to the trial court that a filter system had not been required by TCBH.
 {¶ 39} Finally, the EPA alleges TCBH violated OAC 3701-29-02(D), which requires that any off-lot sewage system cannot be granted if it is demonstrated that such a system would create a public nuisance. The EPA alleges that it provided TCBH and the trial court with evidence that off-lot sewage systems similar to the ones proposed by the applicants were currently creating a public nuisance and, thus, the permits sought by the applicants should have been denied. The Ohio Sanitary Code defines a nuisance as "any condition of sewage that is potentially injurious to the health, safety, comfort, or property of a person, or pollutes waters of the state."[5]
 {¶ 40} Prior to the issuance of the permits, the EPA sent a letter to TCBH informing it that similar off-lot sewage systems along the same road as the systems proposed by the current applicants were creating a public nuisance. Moreover, Erm Gomes from the EPA testified at the September hearing that the current off-lot systems were creating a nuisance and requested TCBH refrain from issuing any off-lot permits until the Attorney General could issue and opinion. There was also testimony from local residents living in the area regarding the pooling water, odor, and abundance of mosquitoes from the current off-lot systems.
 {¶ 41} In its trial brief and its brief to this court, the EPA cites several field evaluations of the existing, neighboring off-lot systems in that area which violate permissible levels of fecal coliform and are creating a public nuisance. However, that testing was conducted after the permits had been issued to the applicants and the results were not made available to TCBH before the permits were issued. The trial court was bound to the TCBH record pursuant to R.C. 206.04 and, thus, did not have the testing results before it on the administrative appeal. Therefore, the record available for this court's review does not include the testing conducted after the permits were issued. However, the existing overwhelming evidence presented to TCBH and available to the trial court reveals the potential for a public nuisance in violation of OAC 3701-29-02(D).
 {¶ 42} At the TCBH hearings, and likewise at the administrative appeal, the EPA brought forth overwhelming evidence demonstrating the potential for a public nuisance by the addition of three off-lot sewage systems to an area that was already violating the Ohio Sanitary Code by creating a nuisance with the existing sewage systems.
 {¶ 43} TCBH alleges in its brief to this court the EPA failed to file a notice of appeal with TCBH and did not perfect its administrative appeal, thereby the trial court lacked jurisdiction to hear the appeal. The record reveals the EPA did file a notice of appeal with TCBH on October 18, 2002. Therefore, TCBH's contention is incorrect.
 {¶ 44} We will not address whether the local sewage regulations are less stringent and, thus, in violation of the Ohio Sanitary Code. However, we conclude, as a matter of law, the decision of the trial court is not supported by a preponderance of reliable, probative, and substantial evidence. Thus, the trial court abused its discretion in affirming TCBH's decision to issue the permits for the off-lot sewage systems in the face of the evidence when considering the record.
 {¶ 45} Based on the foregoing, the EPA's assignment of error is with merit. The judgment of the Trumbull County Court of Common Pleas is reversed, and the matter is remanded to the trial court to vacate the order of the TCBH.
Ford, P.J., Rice, J., concur.
[1] See Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
[2] Ohio Adm. Code 3701-36-13(A)(1)(a).
[3] Id.
[4] Ohio Adm. Code 3701-29-20(D); DeMoise v. Dowell (1984),10 Ohio St.3d 92, 95.
[5] Ohio Adm. Code 3701-29-01(R).