OPINION
{¶ 1} Appellant, Hampton House Management Co. Ltd., appeals the judgment of the Portage County Court of Common Pleas affirming the decision of the Brimfield Township Board of Zoning Appeals ("BZA"), which denied appellant's request for a use variance. At issue is whether appellant has established an unnecessary hardship. For the reasons that follow, we affirm. *Page 2 
 {¶ 2} Appellant is the current owner of a 12-acre tract of land 650 feet west of Route 43 in Brimfield Township, Ohio ("the Property"). The parcel is in the recently-created highway commercial district.
 {¶ 3} In March, 2001, John Epling was the owner of this parcel, which at that time was part of a larger 18-acre parcel which fronted on Route 43. At that time the parcel was in the former highway services district, which allowed residential uses as a conditional use. In that month Mr. Epling applied for a conditional use permit for multilevel housing on the 18-acre parcel. Following a hearing on the application, the BZA, in June, 2001, issued a conditional use permit to him for 168 units in some 14 three-story apartment buildings with approximately 12 units per building. Under the permit, construction had to begin within 270 days of issuance or had to be completed within three years.
 {¶ 4} In 2002 appellant purchased the 18-acre parcel along with the conditional use permit. Sometime after appellant purchased the parcel, it sold off a 5.2-acre section that fronted on Route 43 to Holiday Inn which constructed a hotel at that location. Appellant's remaining 12.8-acre parcel is located 650 feet to the west of Route 43. It cannot be directly accessed from Route 43, but can only be accessed from Sanctuary Drive.
 {¶ 5} Following its purchase of the property, appellant incurred some $600,000 in expenses in preparation for construction under the permit, such as putting in Sanctuary Drive, the access road from Route 43, sewer improvements, and a detention basin.
 {¶ 6} By February of 2005, no construction had begun on the project, and the conditional use permit had expired. In that month zoning inspector Richard Messner *Page 3 
contacted appellant concerning two conditional use permits it held and for which no construction had begun. Mr. Messner advised appellant he would give it two months until April, 2005, to begin construction on the instant project; otherwise, the permit would finally expire. Thus, after the conditional use permit had expired, Mr. Messner gave appellant an extension to come into compliance with the permit. Appellant began construction on the other project, but did nothing on the Property. As a result, the subject conditional use permit expired in April, 2005.
 {¶ 7} In June, 2004, new zoning provisions went into effect in the township. Under the amendment the Property, which was formerly in the highway services district, is in the highway commercial district. Under the former highway services district, residential uses were conditionally permitted, but under the highway commercial district, they are prohibited.
 {¶ 8} The BZA published the proposed changes in its zoning resolution. Appellant conceded that because the township went through the notice process, it had timely notice of the amendment.
 {¶ 9} After the conditional use permit for the 18-acre parcel expired, appellant's representative advised Mr. Messner that appellant wanted to build a ranch-type complex, rather than the three-floor apartment buildings permitted by the conditional use permit. Mr. Messner advised appellant that under the new zoning amendments, residential uses were prohibited in the highway commercial district, so that in order to build such a complex, appellant would have to obtain a use variance.
 {¶ 10} On February 20, 2006, appellant filed an application with the BZA for a use variance to construct a 92-unit ranch-type housing development on the Property for seniors. The BZA conducted a hearing on appellant's application on April 19, 2006. *Page 4 
Pat Rakoci on behalf of appellant testified that, beginning in 2000, there was not that much demand for the type of multilevel developments which the conditional use permit had authorized. She testified that "the multilevel really wasn't that viable, but that ranch was. * * * [W]e realized that the ranch units were very viable and there was a lot of demand for them * * *. So that was the reason for the change. * * *"
 {¶ 11} George Smerigan, a professional planner, was called by appellant to testify in support of appellant's request for a use variance. He said the change in zoning had created a hardship for appellant because appellant had purchased the parcel with the conditional use permit before the zoning changed in 2004 to prohibit residential uses. He said that because appellant sold the 5.2-acre portion of its parcel with its frontage on Route 43 to Holiday Inn, the remaining parcel does not have frontage on Route 43 so the Property is not viable for banks and restaurants, which, appellant maintains, are the only permitted uses in this district. In response to the BZA's question concerning whether appellant had created the hardship, he said that while the sale to Holiday Inn helped create the hardship, because it was sold before the zoning resolution was amended, this was not a self-imposed hardship.
 {¶ 12} He testified that without the variance, appellant will face an unnecessary hardship because if a bank or restaurant were to go onto the Property with a 650 foot setback, they would have no exposure and limited access. As a result, the Property would be at a competitive disadvantage for these uses.
 {¶ 13} Mr. Smerigan testified that, in his opinion, a property owner would not locate a bank or restaurant 650 feet away from Route 43 and behind the Holiday Inn. As a result, Smerigan stated those uses are not available for the Property and appellant has thus been denied viable use of it. *Page 5 
 {¶ 14} He testified that, while appellant did not build any units, it had installed sewer lines and constructed Sanctuary Dr. in preparation for the construction. He said that this work was done pursuant to the conditional use permit, and that because appellant had invested a large amount of money, the variance request should be granted.
 {¶ 15} BZA chairman Michael Jalbert stated the payment of money pursuant to a previously-granted conditional use permit did not create an unnecessary hardship. Mr. Smerigan agreed the spent money did not evidence an unnecessary hardship. Instead, he said it showed the permit was not abandoned. When Mr. Jalbert reminded him that appellant had voluntarily stopped the project about one year ago, Mr. Smerigan agreed but said that was because, based on market conditions, it would be more profitable to amend appellant's conditional use permit but there was no legal way to do it.
 {¶ 16} Mr. Jalbert stated that Brimfield Township and the City of Kent had entered a joint economic development district ("JEDD") agreement on April 21, 2005, and appellant's property is located in it. The parties to the JEDD agreement agreed that the property in the JEDD would only be used for business purposes. The JEDD agreement provides at Sec. 12, entitled "Zoning, Planning and Building Standards:" "The Township agrees to establish and maintain, to the extent permitted by law, zoning of the property as business, commercial or industrial uses within the district."
 {¶ 17} He said that the JEDD agreement identifies the uses for the property in it as exclusively business, commercial, or industrial. He said this issue might be out of their control and required the prosecutor's interpretation. After discussion of this issue, the BZA voted to deny the variance. The BZA in its conclusions of fact found that appellant failed to establish: 1. An unnecessary hardship, 2. Exceptional circumstances *Page 6 
applying to the Property, or 3. Granting a use variance would not result in a substantial detriment to the public interest.
 {¶ 18} Appellant appealed the BZA's decision to the Portage County Common Pleas Court, which affirmed the BZA's decision. Appellant appeals the trial court's judgment, asserting two assignments of error. For its first assignment of error, appellant states:
 {¶ 19} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN AFFIRMING THE BZA'S CONCLUSION THAT APPELLANT HAD FAILED TO ESTABLISH AN "UNNECESSARY HARDSHIP."
 {¶ 20} When a trial court reviews the decision of a board of zoning appeals, the court may reverse the board if it finds the board's decision is not supported by a preponderance of reliable, probative and substantial evidence.
 {¶ 21} In reviewing the decision of a board of zoning appeals, "the court of common pleas must give due deference to the administrative resolution of evidentiary conflicts." Univ. of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108, 111. Further, decisions of administrative agencies carry with them a strong presumption of validity. Blue StoneSand v. Zoning Board of Appeals (1998), 127 Ohio App.3d 37, 43.
 {¶ 22} An appeal to the court of appeals is more limited in scope and requires that court to affirm the decision of the common pleas court, unless the court of appeals finds, as a matter of law, that the decision of the common pleas court is not supported by a preponderance of reliable, probative, and substantial evidence. Winfield v. City ofPainesville, 11th Dist. No. 2004-L-053, 2005-Ohio-3778, at ¶ 12.
 {¶ 23} While the court of common pleas has the power to weigh the evidence, an appeals court is limited to reviewing the judgment of the court of common pleas strictly *Page 7 
on questions of law. Nicholas Co., Inc. v. Aurora Board of ZoningAppeals, 11th Dist. No. 2001-P-0155, 2002-Ohio-6922, at ¶ 12.
 {¶ 24} On appeal to the court of appeals, that court applies an abuse of discretion standard in reviewing the decision of the common pleas court. Thus, "if the appellate court concludes, as a matter of law, the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence, the court of appeals must reverse the decision of the trial court." Environmental Protection Agency v.Trumbull County Board of Health, 11th Dist. No. 2003-T-0112,2005-Ohio-410, at ¶ 22.
 {¶ 25} The BZA chairman Mr. Jalbert stated the township had entered a JEDD with the City of Kent on April 21, 2005. It is undisputed that the entire area of appellant's parcel is located in the JEDD. He said that in light of Sec. 12 of the JEDD agreement, which prohibits by implication all residential uses in the JEDD, the members questioned their authority to grant appellant's variance request.
 {¶ 26} Further, R.C. 715.73 provides, in pertinent part:
 {¶ 27} "The area or areas to be included in a joint economic development district [created under R.C. 715.72] shall meet all the following criteria:
 {¶ 28} * * *
 {¶ 29} (B) No electors shall reside within the area or areas and no part of the area or areas shall be zoned for residential use. "The Revised Code thus prohibits areas which are permitted under township zoning to have residential uses from being located within a JEDD created under R.C. 715.72. By seeking a variance which would permit a residential use in an area which is located in a JEDD, appellant was requesting authority from the BZA to do an act which is prohibited by R.C. 715.73. *Page 8 
 {¶ 30} The BZA members expressed serious reservations about their authority to grant appellant's request for a use variance since that would permit residential use of the Property. When the members stated that, without advice from their counsel, they could not vote on the request, appellant's counsel stated, "I may even agree with that."
 {¶ 31} Since we must presume the regularity of the trial court's proceedings, including its familiarity with the record, we hold that in affirming the BZA's denial of appellant's use variance request, the trial court did not abuse its discretion.
 {¶ 32} We note that in the township's appellate brief, the township asserted that the Property is located within a JEDD and that, pursuant to R.C. 715.73, residential uses are expressly excluded from being in the JEDD. Appellant did not respond to these assertions in its reply brief and they are therefore undisputed.
 {¶ 33} We also hold appellant failed to prove it was entitled to a use variance. In order for a property owner to prove entitlement to a use variance, unlike with an area variance, the burden of proof is heavy. He must establish that without the variance, he will suffer an unnecessary hardship. Unnecessary hardship occurs when it is not "economically feasible" to use the property for any permitted use under its present zoning classification due to characteristics unique to the property. "Unnecessary hardship does not exist unless the property is unsuitable for any of the uses permitted by the zoning resolution." In re Appeal ofDinardo Constr., Inc. (Mar. 31, 1999), 11th Dist. No. 98-G-2138, 1999 Ohio App. LEXIS 1430, *5.
 {¶ 34} The fact that a parcel can be put to a more profitable use does not itself establish an unnecessary hardship where less profitable alternatives are available within the zoning classification.Consolidated Management, Inc. v. Cleveland (1983), 6 Ohio St.3d 238, paragraph two of the syllabus. Appellant's representatives testified it *Page 9 
no longer wished to pursue its conditional use permit because it came to believe that a ranch-style complex would be more profitable than the apartment-type complex permitted under the conditional use permit. This does not demonstrate an unnecessary hardship.
 {¶ 35} Appellant's property is zoned highway commercial. Thus, in order to demonstrate unnecessary hardship, appellant was required to present evidence that its property was unsuitable for any of the uses permitted in this commercial district.
 {¶ 36} Mr. Smerigan testified that banks and restaurants were not economically feasible because they would be set back 650 feet from Route 43 and because they would be on an access road rather than on Route 43. He thus cited lack of visibility and limited access.
 {¶ 37} In June, 2004, the township rezoned the area in which appellant's land is located to highway commercial. The purpose of this district is set forth in the zoning resolution, as follows:
 {¶ 38} "The purpose of the Highway Commercial Zoning District is to encourage the development of areas surrounding highway interchanges and along major arterials and their intersections with higher intensity commercial land uses that need the locational advantages provided by highway arterials such as accessibility, visibility, and nearness to large volumes of passing traffic. Development within this district is to be compatible with the surrounding environment and the characteristics of the site on which is located and not impair the operational aspects of the road. The district is intended to serve the needs of the motoring public." Zoning Resolution, Sec. 301.01.
 {¶ 39} The current zoning resolution allows many different commercial and public uses in the highway commercial district, including banks and other financial institutions; *Page 10 
food and drink preparation for sale on site, including bakeries, cafes, candy stores, grocery stores, and restaurants; and signs. Zoning Resolution, Sec. 310.02(A).
 {¶ 40} The highway commercial district also includes other uses such as car washes, car and truck leasing, gasoline service stations, hotels and motels, motor vehicle sales and repair facilities, park and ride lots, private parking lots and garages, publicly-owned and/or operated buildings and service facilities, and wireless communications facilities.
 {¶ 41} We note that while appellant's expert testified that banks and restaurants were not, in his opinion, economically viable uses on the Property, he did not comment on the many other permitted uses on the Property.
 {¶ 42} We also note that extremely high and brightly-illuminated signs near heavily-travelled roads often advertize the location of many restaurants and hotels today so that potential customers of such businesses no longer expect that all of them will be on the main thoroughfare.
 {¶ 43} Moreover, there is no evidence in the record that appellant has attempted to market the Property for any of its permitted uses.
 {¶ 44} We therefore hold appellant failed to demonstrate there are no other economically feasible uses permitted for the Property under the current zoning resolution. It thus failed to prove an unnecessary hardship.
 {¶ 45} Appellant's first assignment of error is without merit.
 {¶ 46} For its second assignment of error, appellant asserts:
 {¶ 47} "THE TRIAL COURT ERRED IN AFFIRMING THE BZA'S DECISION TO DENY APPELLANT A USE VARIANCE." *Page 11 
 {¶ 48} Appellant argues that all the evidence in the record supports the use-variance factors set forth in the Township's zoning resolution at Sec. 204.04(A). The flaw in appellant's argument, however, is that appellant failed to address the viability of permitted uses other than banks and restaurants on the Property. Mr. Smerigan simply did not address these other uses. As a result, appellant failed to demonstrate that the many other permitted uses are not economically feasible.
 {¶ 49} Appellant next argues that the trial court did not consider the evidence. However, there is nothing in this record which would lead us to conclude that such is the case. Appellant argues that because neither the BZA nor the trial court analyzed each of the township's use variance factors in light of the evidence, this demonstrates that neither tribunal considered all the evidence in this case. We do not agree.
 {¶ 50} Contrary to appellant's argument, the BZA addressed the factors listed in the township's zoning resolution that related to the existence of an unnecessary hardship. These include whether there existed an unnecessary hardship, whether the circumstances concerning the Property were unique or exceptional, whether a strict application of the zoning resolution would be inconsistent with the general purpose of the resolution, and whether granting the variance would not result in a substantial detriment to the public interest. The BZA found these factors weighed against granting the variance.
 {¶ 51} Based on the evidence presented, the BZA properly found that appellant failed to establish these factors so that appellant was not entitled to a use variance.
 {¶ 52} Appellant argues that because it incurred expenses pursuant to the conditional use permit, it acquired a "vested right" to the variance it sought. We do not agree. Appellant's witnesses testified that its expenses were directly related to the *Page 12 
conditional use permit. However, the conditional use permit would have expired in June, 2004, but for the zoning inspector's offer in February, 2005 to give appellant an additional two months to April, 2005, to begin construction of the apartment building. Appellant concedes it failed to do this and never attempted to modify the conditional use permit before it expired. As such, appellant voluntarily relinquished any right to which it may have been entitled under the conditional use permit by abandoning it. Mr. Smerigan's testimony that appellant's expenses demonstrate appellant did not abandon the conditional use permit is contradicted by appellant's conduct in allowing the permit to expire and appellant's voluntary decision not to construct the apartment authorized by the conditional use permit.
 {¶ 53} Further, the expenses incurred were for items which were preliminary to the actual construction — the cost of constructing the access road and retention pond and the cost of upgrading the sanitary sewer system. In addressing whether costs incurred in preliminary work confer a vested right to a nonconforming use, the Ohio Supreme Court has held:
 {¶ 54} "Where no substantial nonconforming use is made of property, even though such use is contemplated and money is expended in preliminary work to that end, a property owner acquires no vested right to such use and is deprived of none by the operation of a valid zoning ordinance denying the right to proceed with his intended use of the property." Smith v. Juillerat (1954), 161 Ohio St. 424, paragraph four of the syllabus.
 {¶ 55} It is undisputed that the Property remains vacant and construction of the permitted apartment was never begun, let alone completed. Thus, appellant acquired no vested right to the variance for which it later applied. *Page 13 
 {¶ 56} Appellant's argument that the BZA based its decision on appellant's failure to comply with the conditional use permit is irrelevant since that was not referenced in its findings of fact and decision. Until a final order was entered by the BZA, it was free to revise its decision at any time. Civ.R. 54(B). Not only was this failure not part of the BZA's final order, it was never reduced to writing. As such, the BZA's discussion of this issue is irrelevant to the board's decision.
 {¶ 57} Appellant's second assignment of error is without merit.
 {¶ 58} For the reasons stated in the Opinion of this court, the assignments of error are without merit and it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is affirmed.
COLLEEN MARY OTOOLE, J., concurs,
 DIANE V. GRENDELL, J., concurs in judgment only. *Page 1