[Cite as *Bacak v. Ventling*, 2016-Ohio-4737.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| JOE BACAK, et al., | : | **O P I N I O N** |
| Cross-Appellees, | : | |
| - vs - | : | **CASE NO. 2015-T-0029** |
| TRUMBULL COUNTY BOARD OF COMMISSIONERS, et al., | : | |
| | : | |
| Defendants, | : | |
| | : | |
| GARY P. VENTLING, | : | |
| Cross-Appellant. | : | |
| | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2004 CV 02140.

Judgment: Affirmed.

*Frank R. Bodor,* 157 Porter Street, N.E., Warren, OH 44483 (For Cross-Appellees).

*Thomas C. Nader,* 5000 East Market Street, #33, Warren, OH 44484 (For Cross-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Cross-appellant, Gary Ventling (hereafter "appellant"), appeals the judgment of the Trumbull County Court of Common Pleas, following a trial to the magistrate, in favor of appellees, Joe Bacak, et al., and against appellant and the Trumbull County Board of Commissioners, declaring R.C. 307.73, regarding private

contracts for the construction of sewer lines, to be unconstitutional. Appellant appealed the trial court's finding that R.C. 307.73 is unconstitutional as applied to appellees; however, he did not appeal the trial court's additional finding that the statute is unconstitutional on its face. At issue is whether the trial court's declaration that R.C. 307.73 is unconstitutional on its face includes the finding that the statute is unconstitutional as applied to appellees. Because we hold that it does, we affirm.

{¶2} Plaintiffs-appellees, Joe Bacak and some nine other individuals, are property owners and residents of Trumbull County, who formed an association known as "C.A.U.S.E.," which stands for Citizens Against Unconstitutional Sewer Extensions. Appellees referred to themselves in the trial court as the "Sablecreek Plaintiffs" in order to distinguish themselves from other similarly-situated groups included in C.A.U.S.E. Appellees reside on St. Mary's Drive in Mineral Ridge, Ohio, and were ordered by the Trumbull County Commissioners to tie into a new sewer extension on St. Mary's Drive and to reimburse appellant, who constructed the extension, for the costs of its construction.

{¶3} In their Complaint, filed August 26, 2004, appellees requested declaratory judgment and injunctive relief against the commissioners and appellant, alleging that R.C. 307.73, which authorizes private sewer construction projects, is unconstitutional in that it violates procedural due process.

{¶4} The case proceeded to trial before the magistrate. As fully explained below, the trial court entered judgment in favor of appellees and against the commissioners and appellant. The commissioners and appellant filed separate appeals in this court. Subsequently, the commissioners dismissed their appeal and appellant's appeal is the only appeal remaining before us.

{¶5} Appellees had previously installed septic systems to service their homes due to the unavailability of a sewer system in their area.

{¶6} On August 30, 2001, appellant, who lives on St. Mary's Drive, and the commissioners entered a "Private Agreement for Extension of Sanitary Sewer" for the extension of a sanitary sewer on St. Mary's Drive pursuant to R.C. 307.73. On September 13, 2001, the commissioners enacted a resolution to enter said agreement.

{¶7} According to the agreement, the commissioners gave appellant permission to construct the sewer extension to his property. Appellant agreed to pay for the preparation of plans and specifications for the project and for construction of the sewer line. Further, the agreement provided that "[i]f and when any abutting property * * * desires to tap into or connect to said improvements, a connection charge will be charged the owner of said abutting property based on the pro rata costs as computed from the * * * cost statement which shall be reimbursed to [appellant] * * *."

{¶8} Appellant did not advertise for or take any bids on this project, as such is not required by R.C. 307.73. Instead, he hired the engineering firm of Lynn, Kittinger, & Noble to prepare the plans and specifications. He also hired Ady & Sons Construction to construct the sewer extension.

{¶9} Appellant began construction of the project on May 9, 2002. He completed the sewer extension on November 13, 2002, and the Trumbull County Sanitary Engineer's Office issued a certificate of completion on that date. One week later, on November 21, 2002, appellant submitted a cost statement to the Sanitary Engineer's Office for approval. The original estimated cost of the project was $61,000, but the cost statement submitted by appellant was $103,460, which was $42,460, or 41%, over the original estimate.

3

{¶10} Prior to completion of the project, neither the commissioners nor appellant ever sent any letters or other form of written notice to appellees notifying them of the existence of the private sewer extension agreement or that appellees would be responsible for paying their pro rata share of the cost. Rather, for the first time, on April 7, 2004, *17 months after completion of the project*, appellant filed a copy of the commissioners' resolution to enter the private sewer extension agreement with the Trumbull County Auditor.

{¶11} On December 13, 2003, the Trumbull County Health Department sent letters to appellees advising them that they were required to abandon their own septic systems and to tap into the new sewer extension. Appellees were also advised by these letters that when they tapped-in, they would have to pay to the county their total pro rata share of appellant's costs for the sewer extension in one lump sum. However, the notice did not provide them with an exact or even an approximate amount of their cost.

{¶12} Jay Walton, Senior Environmental Engineer with the Trumbull County Sanitary Engineer's Office, testified he has the sole authority and discretion to approve the statement of costs submitted by individuals, such as appellant, with respect to private sewer construction projects. This includes reviewing the statement of costs and determining which, if any, of the submitted costs should be approved for reimbursement by the other abutting property owners. Walton's decision is final and not subject to any objection, hearing, or appeal. He testified that a property owner who tapped into the sewer extension would have to pay whatever amount he determined and would have no say in the matter.

4

{¶13} Walton found $29,281 of the $103,460 cost statement to be improper and approved the total cost of the sewer extension project as $74,179, which was still $14,000 over the original $61,000 cost estimate. The property owners on St. Mary's Drive were never sent any notice as to the approved cost. The first time any owner would have discovered the cost of the tap-in would be when the property owner came to the Board of Health in response to the Board's letter advising them that they were required to tap into the sewer extension and to pay their share of appellant's costs.

{¶14} Thomas Holloway, Trumbull County Sanitary Engineer at the time the subject project was approved, testified that, pursuant to R.C. 307.73, Walton has full discretion in determining the amount property owners who tap into a sewer extension will be required to pay. He said that whatever amount Walton determined the final cost to be, the property owner tapping into the extension is required to pay it and has no appeal from Walton's decision. Under that procedure, the property owner is not given notice of the cost or an opportunity to object to it. He said there is an alternative procedure for a sewer construction project provided for at R.C. Chapter 6117. Under these provisions, the commissioners put the project out for bid and the improvement is ultimately paid for by an assessment. He said that, pursuant to Chapter 6117, the affected property owners are given notice of the preliminary assessment. Further, under that statute, property owners have the right to file objections, the right to a hearing, and the right to appeal the commissioners' decision to the Probate Court.

{¶15} The magistrate issued her decision on July 2, 2013, in favor of appellees and against appellant and the commissioners. The magistrate decided that R.C. 307.73 is unconstitutional as applied in that it violated appellees' procedural due process rights. The magistrate found that because appellees did not have proper notice under R.C.

5

307.73 and because appellees were required by Ohio Adm. Code 3701-29-02 to tie into the new sewer line, R.C. 307.73 is unconstitutional as applied to appellees and, thus, they were not required to pay the prorated cost of the sewer improvement project. The commissioners and appellant filed objections to the magistrate's decision. The trial court, by its judgment filed on February 6, 2015, overruled the objections; modified the magistrate's decision by also finding R.C. 307.73 to be unconstitutional on its face; and adopted the magistrate's decision as modified.

{¶16} The commissioners appealed the trial court's judgment to this court on March 5, 2015. That appeal was assigned Case No. 2015-T-0019. On March 16, 2015, appellant filed a separate appeal, which was assigned Case No. 2015-T-0029. This court sua sponte consolidated the two appeals on April 17, 2015. On that same date, the commissioners filed a notice of dismissal of their appeal (Case No. 2015-T-0019). This court construed that notice as a motion to dismiss, and granted that motion on June 8, 2015. The dismissal of the commissioners' appeal left only appellant's appeal.

{¶17} Appellant asserts six assignments of error. Because the third through sixth assigned errors are interrelated, they are considered together. They allege:

{¶18} "[3.] The Trial Court's Decision That Revised Code Section 307.73 is Unconstitutional as applied to the Sablecreek Plaintiffs is error.

{¶19} "[4.] The Trial Court erred in finding that the Appellees did not have the Required Notice Pursuant to Revised Code Section 307.73.

{¶20} "[5.] The Trial Court Erred in finding that Separate Sablecreek Plaintiffs Michael and Joanne Hanysh did not have constructive notice of the private extension agreement.

6

**{¶21}** "[6.] The Trial Court erred in concluding that the Sablecreek Plaintiffs/Appellees did not have Actual Notice of the Ventling Private Extension Agreement."

**{¶22}** "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Brown v. Gabram*, 11th Dist. Geuaga No. 2004-G-2605, 2005-Ohio-6416, ¶11. *Accord In the Matter of Gibbs*, 11th Dist. Lake No. 97-L-067, 1998 Ohio App. LEXIS 997, *12 (Mar. 13, 1998) (an appellate review of the trial court's decision under Civ.R. 53 is limited to a determination of whether the court abused its discretion in adopting the magistrate's decision). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

**{¶23}** R.C. 307.73, entitled, "Contract for private construction of * * * sewer lines," provides that a board of county commissioners may, upon application by any individual or private entity, authorize such individual/entity to construct sewer lines under the board's supervision.

**{¶24}** R.C. 307.73 also provides that the board of commissioners shall collect and return to such individual/entity a prorated share of the cost of such improvement when such improvement is tapped into by a nonparticipant in the original cost, i.e., an abutting property owner who did not pay any part of the original cost. The prorated share is based on the front footage of improvement to the nonparticipant, and shall not exceed the amount the nonparticipant would have paid if he had participated in said project.

**{¶25}** R.C. 307.73 also provides that a copy of the commissioners' resolution granting permission to construct sewer lines and authorizing the collection of a prorated share shall be filed by the applicant (here, appellant) with the county auditor, who shall keep an index of all such resolutions. The filing of such resolution constitutes constructive notice thereof. Significantly, R.C. 307.73 provides that "[n]o nonparticipant shall be required to pay the prorated share of the cost of such improvement permitted by resolution without such notice."

**{¶26}** Further, pursuant to R.C. 3701.34, the Ohio Department of Health is given the authority to establish sanitary sewer regulations of general application throughout the state. Pursuant to this authority, the health department established a policy requiring the elimination of individual septic systems and connection to a sanitary sewerage system when such a system becomes accessible. Ohio Adm. Code 3701-29-02 provides:

> **{¶27}** (L) No household sewage disposal system shall be installed, maintained, or operated on property accessible to a sanitary sewerage system.

> **{¶28}** (M) Whenever a sanitary sewerage system becomes accessible to the property, a household sewage disposal system shall be abandoned and the house sewer directly connected to the sewerage system.

**{¶29}** The Supreme Court of Ohio upheld the constitutionality of Ohio Adm. Code 3701-29-02 in *DeMoise v. Dowell*, 10 Ohio St.3d 92 (1984). In *DeMoise*, the Court held that local health boards possess "the authority to require that whenever a sanitary sewerage system becomes accessible to a property, the household sewage disposal system shall be abandoned and the house sewer directly connected to the sewerage system." *Id.* at syllabus. The Court held the connection "requirement bears a

8

real and substantial relationship to the public health, is not unreasonable or arbitrary, and does not constitute a deprivation of due process of law." *Id.*

{¶30} While the Ohio Supreme Court found Ohio Adm. Code 3701-29-02 (requiring connection to an accessible public sewer) to be constitutional in *DeMoise*, the Court did not address the constitutionality of R.C. 307.73 (providing for private sewer construction agreements) in that case.

{¶31} "It is well settled that an enactment of the General Assembly is entitled to a strong presumption of constitutionality." *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, ¶7. "Therefore, challenged legislation will not be invalidated unless the challenger establishes the unconstitutional nature of the statute beyond a reasonable doubt." *Cowan, supra.*

{¶32} There are two different ways of challenging a statute on constitutional grounds: 1) by arguing that it is unconstitutional on its face, or 2) by arguing that it is unconstitutional as applied to a particular set of facts. *Cleveland Gear Co. v. Limbach*, 35 Ohio St.3d 229, 231 (1988). "An as applied challenge asserts that a statute is unconstitutional as applied to the challenger's particular conduct." *Kruppa v. Warren*, 11th Dist. Trumbull No. 2009-T-0017, 2009-Ohio-4927, ¶12. In contrast, a facial challenge asserts the statute is unconstitutional in "all of its applications." *Id.*

{¶33} The Supreme Court of Ohio in *State v. Mateo*, 57 Ohio St.3d 50, 52 (1991), discussed the requirements of procedural due process, as follows:

> {¶34} The United States Supreme Court has stated that the essence of due process is notice and an opportunity to be heard: "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' * * * [Citations omitted.] It is equally fundamental that the right to notice and an opportunity to be heard 'must be granted

9

at a *meaningful time and in a meaningful manner*.' (Emphasis added.) *Armstrong v. Manzo*, 380 U.S. 545, 552 [1965]." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). *See also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "As a general rule, due process requires that the government give notice and an opportunity to be heard *before* taking an individual's liberty or property." (Emphasis sic.) *United States v. 141st Street Corp.*, 911 F.2d 870, 874 (2d Cir.1990). * * * "Due process of law involves only the essential rights of notice, hearing or opportunity to be heard before a competent tribunal. * * *" *State v. Luff*, 117 Ohio St. 102 (1927), paragraph four of the syllabus. *See also State v. Edwards*, 157 Ohio St. 175, 178 (1952), paragraph one of the syllabus.

{¶35} The trial court, in addition to finding that R.C. 307.73 is facially unconstitutional, expressly found, at p. 11 of its judgment entry, that "R.C. 307.73, *as applied under the facts of the Sablecreek Plaintiffs* [*i.e., appellees*], is unconstitutional[.]" (Emphasis added.) Further, appellant does not challenge on appeal the trial court's finding that R.C. 307.73 is facially unconstitutional.

{¶36} Since appellant appeals only the trial court's as-applied finding and does not appeal the court's facial finding, the trial court's conclusion that the statute is unconstitutional on its face stands. As such, the statute is unconstitutional in all of its applications, *Kruppa, supra,* including its application to appellees.

{¶37} Because appellant did not appeal the trial court's finding that R.C. 307.73 is unconstitutional on its face, there is nothing for us to consider and we therefore uphold this finding. In any event, the trial court's record fully supports this finding. The trial court demonstrated in its judgment the lack of procedural due process in R.C. 307.73 by way of a chart. That graphic contrasted the lack of due process in R.C. 307.73 with the multiple layers of due process in R.C. Chapter 6117, which sets forth an alternative method for constructing sewers by the county commissioners. Under Chapter 6117, the commissioners are authorized to construct sewers and to assess the

10

costs against the affected property owners. The trial court noted that under R.C. 6117.06, the sanitary engineer is required to prepare plans and cost estimates in a "tentative assessment" for "the information of property owners" prior to any levy. Notice must be mailed to all affected property owners prior to adoption of the resolution. The statute provides for objections to the project in general, the tentative assessment, and the physical boundaries. A hearing must then be held on any objections after notice to all affected property owners of the hearing, which includes details of the project. A property owner can file objections up to five days after the hearing. Under R.C. 6117.09, a property owner can also appeal to the Probate Court.

{¶38} In contrast to R.C. Chapter 6117, the trial court noted on its graphic that under R.C. 307.73, the filing of the commissioners' resolution adopting a private sewer construction agreement with the county auditor constitutes constructive notice to affected property owners, but there is no time requirement as to when the resolution must be filed. Further, pursuant to this statute, affected property owners are only entitled to notice of the resolution itself; the statute does not require that the total or even the estimated cost of the project be included in the notice. R.C. 307.73 does not require any oversight of the private contractor's costs. Property owners are not entitled to review any costs and there is no provision for objections. There is no provision for any affected property owner to be heard or for any judicial review of the decision of the Sanitary Engineer's Office regarding the amount abutting property owners must pay in order to reimburse the individual/private entity that constructed the sewer.

{¶39} Thus, the trial court's comparison demonstrates that R.C. 6117, et seq., provides due process protections for affected property owners, while R.C. 307.73 is devoid of due process.

11

{¶40} The trial court found there are no circumstances in which the statute can provide procedural due process protections. The court found there is no way to challenge appellant's unreasonable charges as there are no meaningful due process rights built into R.C. 307.73 The court stated, "[T]he landowner in Trumbull County is getting nailed with unfounded and unreasonable charges because R.C. 307.73 simply does not provide the protection necessary to contest these matters. Additionally, the constructive notice requirement of R.C. 307.73 does not provide the landowner with sufficient information in a timely manner to know the actual costs to challenge any unreasonable costs that are charged." The court stated: "R.C. 307.73, by providing no safeguards or even minimal due process, leaves innocent landowners with no choice but to tap in and pay whatever costs are charged or be criminally prosecuted by the Board of Health." In addition, the trial court found "the lack of judicial oversight" is "a continuation of the affront to the right of due process present in R.C. 307.73."

{¶41} The trial court noted the total lack of procedural due process is best summed up by Jay Walton of the Trumbull County Sanitary Engineer's Office. When asked as to how the taxpayers are to be "protected from a contractor who * * * overcharges in a case like this," Walton answered, "Jeez. I don't know what to say. I guess there is no protection."

{¶42} While the trial court's facial finding includes the finding that R.C. 307.73 is unconstitutional as applied to appellees, the record supports such finding. Although R.C. 307.73 provides that the filing of the resolution with the county auditor constitutes constructive notice, here, the resolution was not filed by appellant with the county auditor until *17 months after completion of the sewer project.* Although appellant correctly argues that R.C. 307.73 does not provide an express time limit by which an

12

applicant must file a copy of the commissioners' resolution, in order for the resolution to constitute constructive notice, it must pre-date the work for which the resolution is providing notice. *Mateo, supra.* Because appellant did not file the resolution until 17 months *after completion of the project,* it was too late for appellees to effectively challenge the project or its costs. Thus, the "constructive notice" provided to appellees pursuant to R.C. 307.73 was not meaningful and did not satisfy procedural due process.

{¶43} Moreover, R.C. 307.73 does not require that any reference to the cost of the project be included in the resolution, and appellees were not given any advance notice regarding the cost of the project, not even the original estimated cost of the project. However, without such notice, appellees could not possibly have known whether there was any need for them to object to the project or to the costs submitted by appellant.

{¶44} Appellant argues that because appellees, Michael Hanysh and Joanne Hanysh, bought their property in August 2004 (four months after appellant filed the commissioners' resolution), the Hanyshes had constructive notice of the project. However, this argument misses the point. As successors in interest to the prior owners, the Hanyshes had the right to assert appellant's failure to provide notice and an opportunity to be heard to their predecessors.

{¶45} Next, appellant argues that even if appellees did not have constructive notice pursuant to R.C. 307.73, they had actual notice of the project because the sewer extension project would have required construction equipment to be near appellees' properties. In *Edgar v. Hines*, 35 Ohio App.3d 23 (12th Dist.1987), the Twelfth District held that, "[a]lthough R.C. 307.73 provides that constructive notice, as set forth in the statute, is a prerequisite to obtaining reimbursement for private construction of a sewer

13

line, actual notice to the concerned property owners is also sufficient." *Id.* at paragraph three of the syllabus. In *Edgar, supra,* the appellate court held that if the property owner had actual notice of the cost of construction of the sewer, constructive notice is not necessary. *Id.* at 25.

{¶46} Appellant argues that because appellees were in a position to see this installation, they had actual notice of the project and, thus, constructive notice was not necessary. However, the magistrate rejected this argument, finding that, although appellees had actual notice of the installation of the sewer extension near their homes, they did not have actual notice as to the required tie-in or the cost associated therewith. The magistrate also found that the newspaper articles referenced by appellant as evidence of actual notice merely addressed the residents' objections to the general concept of sewer tie-in requirements and that these articles were not evidence that appellees had actual notice of the cost of the project.

{¶47} Significantly, appellant concedes that any knowledge appellees acquired took place *after* the commissioners' resolution approving the sewer extension was adopted and *after* construction of the project had already begun. There is no evidence in this record that, *before the project was approved by the commissioners* and construction had begun*,* appellees knew (1) of the sewer extension agreement between the commissioners and appellant, (2) the commissioners' resolution approving that agreement, (3) the cost of the project, or (4) appellees' pro rata share of the costs. Thus, the presence of construction equipment did not provide actual notice of the cost of the project.

{¶48} Further, the magistrate found that the lack of procedural due process in R.C. 307.73 prevented appellees from being able to assert legitimate challenges to

14

unreasonable costs submitted by appellant for reimbursement. From the original cost statement submitted by appellant in the amount of $103,460, Walton determined that several of the cost items (totaling $29,281) were obviously improper and subtracted them, including a $10,573 charge for unsubstantiated "miscellaneous" items; $15,975 in interest charged by appellant's engineering firm, Ady & Sons, due to appellant's failure to timely pay that firm's bills on the project; and $2,555 for charges that were attributable to appellant's own home. Further, the magistrate found the fact that appellant sought reimbursement for such obviously improper charges made the other charges in his bill all the more suspect.

{¶49} The magistrate also found that many other costs were improper and unreasonable and should have been – but were not - subtracted by Walton from the $74,179 final approved cost of the project. These included an unexplained $12,000 charge for rock excavation; $6,960 in attorney fees (which appellant was ordered to pay a non-party who successfully sued appellant in an unrelated action for trespass on his property); $2,985 (which was assessed against appellant personally in that trespass action for his failure to comply with the settlement agreement requiring appellant to repair the damage he caused to the plaintiff's property); and $7,500 in attorney fees (which appellant's own attorney charged him for defending him in that trespass action). The court found it was improper and unreasonable for appellant to pass these cost items on to the taxpayers and for the Sanitary Engineer's Office to approve these costs without appropriate review and oversight. In addition, the magistrate found the invoice submitted by appellant's construction firm in the amount of $46,759, which was nearly double their original proposal with no legitimate substantiation, was unreasonable. The magistrate found that Walton essentially approved any cost submitted by appellant's

15

construction firm without requiring any documentation to show the cost was reasonable or necessary.

{¶50} The trial court was appalled at the near complete lack of oversight by the Sanitary Engineer's Office through its agent, Walton, of appellant's statement of costs. Walton admitted he approved obviously suspect cost items without requiring any substantiation or explanation. He even approved costs that were unrelated to the project and costs that were caused by appellant's improper conduct. Incredibly, Walton said he still planned to charge the taxpayers several substantial cost items submitted by appellant even after Walton acknowledged they were improper and wrong.

{¶51} To make matters worse, although the sewer extension agreement required appellant to provide a "certified notarized cost statement" within 90 days of completion of the project, he never certified the accuracy of his cost statement. After the project was completed, Walton wrote two letters to appellant in May and June 2003, demanding the certification. Walton told appellant that without the certification, the sewer extension agreement would become void and he would lose his right to any reimbursement. Despite these demands and warnings, appellant never provided the required certification. Even more incredible, Walton said he ultimately decided to overlook this omission and to simply pass the charges on to the taxpayers without the certification.

{¶52} We therefore uphold the trial court's finding that R.C. 307.73 is unconstitutional on its face. Since appellant did not appeal that finding, his argument that the trial court erred in finding R.C. 307.73 unconstitutional as applied lacks merit.

{¶53} Appellant's third, fourth, fifth, and sixth assignments of error are overruled.

16

{¶54} Appellant's first and second assigned errors are related and thus considered together. They allege:

{¶55} "[1.] The Trial Court's Order that Appellees have the right to tap into the Sablecreek Sanitary Sewer Line at no cost is an unconstitutional taking.

{¶56} "[2.] The Appropriate Remedy to be awarded Appellees is that the Sablecreek Sanitary Sewer Lines Are Not Available and that Appellees Are Not Required to Tap into the Sanitary Sewer Lines."

{¶57} The Ohio Constitution states that "private property shall ever be held inviolate, but subservient to the public welfare. * * * Where private property shall be taken for public use, a compensation therefore shall first be made in money * * * and such compensation shall be assessed by a jury * * *." *State ex rel. OTR v. City of Columbus*, 76 Ohio St.3d 203, 206 (1996), quoting Section 19, Article I, Ohio Constitution. A taking occurs when a landowner experiences a substantial or unreasonable interference with property. *OTR, supra.* That interference may involve an actual physical taking of real property or it may include the deprivation of an intangible interest in the premises. *Id.*

{¶58} Appellant argues the trial court's judgment interfered with his property right to reimbursement in the sewer extension agreement, resulting in a taking. In support, he cites *Stop The Beach Renourishment v. Florida Dept. of Environmental Protection*, 560 U.S. 702 (2010). However, his reliance on this case is misplaced. In *Stop the Beach*, the Supreme Court stated, "The takings clause only protects property rights as they are established under state law * * *." *Stop The Beach* at 732. Appellant's claimed property right to reimbursement is based on a statute that violates procedural due

17

process. Because R.C. 307.73 is unconstitutional, appellant's taking claim fails because it is not based on a valid state law.

{¶59} In any event, even if R.C. 307.73 was constitutional, it provides that property owners who tap into the sewer line are not required to pay the prorated share of the cost of the project if the applicant fails to provide constructive notice of the project. Thus, constructive notice is a prerequisite to reimbursement. *Edgar, supra,* at paragraph three of the syllabus. Since appellant did not file the commissioners' 2001 resolution until April 2004, 17 months after the project was completed, appellant failed to give the affected property owners constructive notice at a meaningful time and he is not entitled to reimbursement.

{¶60} Further, appellant argues that, to avoid a taking, the trial court should have declared the sewer extension to be unavailable and, this way, appellees would have been allowed to disconnect from the sewer. However, the remedy appellant seeks would have required the trial court to find that the sewer line is not physically available to appellees when, in fact, it is. Moreover, appellant's proposed remedy would violate Ohio Adm. Code 3701-29-02, which requires that when a sanitary sewerage system becomes accessible to the property, the house must abandon the household sewage system and be connected to the sanitary sewerage system. Moreover, appellant's proposed remedy would impliedly overrule the Ohio Supreme Court's decision in *DeMoise, supra.* As noted above, the Ohio Supreme Court in that case held that when a public sewer system is available to a property owner, he must abandon his personal sewer system and connect to the public system. There is no dispute in this record that construction of the sewer extension made it available to appellees and thus appellees are legally bound to tie into it. However, as a result of the due process violations

18

discussed herein, the trial court did not abuse its discretion in adopting the magistrate's decision that appellees were entitled to tie into the sewer system at no cost.

{¶61} Appellant's first and second assignments of error are overruled.

{¶62} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.